[No. G044023. Fourth Dist., Div. Three. July 27, 2011.]

VERONICA CABRERA, Plaintiff and Respondent, v.
MOHAMMED ALAM, Defendant and Appellant.

1078

**COUNSEL**

Barry A. Ross for Defendant and Appellant.

The Roberts Law Firm and Jeffrey T. Roberts for Plaintiff and Respondent.

**OPINION**

**FYBEL, J.—**

## INTRODUCTION

Plaintiff Veronica Cabrera sued defendant Mohammed Alam for defamation, based on statements he made at a homeowners association's annual meeting immediately before the membership's election of the association's board of directors. Defendant was running for reelection to the board of directors. Plaintiff, a past president of the board of directors, had actively campaigned against defendant and in favor of a competing slate of candidates. At the time that the allegedly defamatory statements were made, plaintiff was speaking on behalf of one of the candidates challenging defendant's reelection, having been given that candidate's "power of attorney" to represent him at the meeting. Plaintiff accused defendant of having mismanaged the association's finances and stated the association was missing money. In response, defendant accused plaintiff of stealing money from the association and defrauding it.

The trial court denied defendant's special motion to strike plaintiff's defamation claim under Code of Civil Procedure section 425.16, commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute (the anti-SLAPP motion).[1] Defendant contends the trial court erroneously concluded he failed to meet his initial burden of showing the conduct underlying plaintiff's defamation claim was protected activity within the meaning of the anti-SLAPP statute.

█ We reverse and remand with directions to grant the anti-SLAPP motion. Defendant carried his burden of showing the defamation claim was based on protected activity under section 425.16, subdivision (e)(3). We hold defendant's statements were protected activity because they were made in a public forum at a homeowners association's annual meeting and concerned an issue of public interest, namely, the qualifications of a candidate for office in the association. Plaintiff failed to carry her burden of showing a probability of prevailing on the merits of the defamation claim. Having thrust herself into the controversy surrounding the election of the association's board of directors, she became a limited purpose public figure who was required to show defendant made the allegedly defamatory statements with malice. Plaintiff failed to produce *any* evidence showing defendant made the statements knowing them to be false or recklessly disregarding their falsity.

## BACKGROUND

Plaintiff's complaint asserted claims for defamation (slander), intentional interference with contractual obligation, negligent interference with contractual obligation, and unfair business practices. According to plaintiff, the gravamen of her defamation claim is that defendant "stated to a room full of residents from Brookhurst Village, that Plaintiff had committed the crime of fraud on the Brookhurst Village Homeowners Association and stolen funds from the Association."

Defendant filed the anti-SLAPP motion challenging the defamation cause of action. The anti-SLAPP motion was supported by defendant's declaration which explains how plaintiff, a past president of the homeowners association's board of directors, had been actively campaigning on behalf of a slate of candidates running for the Brookhurst Village Homeowners Association, Inc.'s (the association) board of directors. The association served Brookhurst Village Condominiums, a nonprofit, common interest development consisting of 228 condominiums.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

Beginning about two weeks before the association's annual meeting and board of directors election scheduled for September 17, 2009, plaintiff began passing out flyers identifying five candidates she supported for election to the board of directors. Defendant's declaration stated plaintiff "apparently prepared the flyer because her name is mentioned after every candidate on the flyer." (Plaintiff does not dispute she prepared the flyer or was extensively involved in campaigning on behalf of that slate of candidates.) The copy of the flyer, which was attached to defendant's declaration and entitled "NEW ELECTIONS ON SEPTEMBER 17th!!! [¶] Support us for the up-coming year!," identified five candidates and includes a statement of support by plaintiff following each candidate. The flyer first identified Francisco Luna and stated, inter alia, "Veronica Cabrera, los apoya!/support this group!" Next, candidate Teofilo Ibarra was identified, followed by the statement, " 'This is your home vote' Veronica Cabrera." After a statement attributed to candidate Jose Gutierrez was the following: " 'Make a difference and vote' Vero." Following a statement by candidate Maximino Gutierrez, the flyer stated, " 'Para proteger tu inversion, vota[,'] Veronica Cabrera." Finally, after identifying candidate Diana Chacon, the flyer stated, " 'Por igualdad y honestidad vota,' Vero."

On September 17, 2009, about 30 to 45 minutes before the association's annual meeting and election of the board of directors, plaintiff "was milling about and talking with the people who were gathering for the meeting." She continued to campaign for certain candidates and also to campaign specifically against defendant, who was a current member of the association's board of directors and was seeking to be reelected that night.

The property manager of Brookhurst Village Condominiums called the meeting to order at 7:00 p.m. and stated that because there was going to be an election, only homeowners could attend. Because plaintiff had sold her condominium a few months earlier, the property manager asked her to leave.[2] Plaintiff "stood up and said she has a right to be at the meeting because one of the homeowners had given her a 'power of attorney.' " Plaintiff stated she had been given power of attorney to represent candidate Teofilo Ibarra at the meeting and election that night. After the property manager explained that plaintiff could not represent Ibarra at the meeting because he was also present, Ibarra said he would leave so that plaintiff could stay.

---

[2] Plaintiff's extensive involvement and intense interest in the outcome of the election might be explained by the complaint's allegations that plaintiff is a real estate agent who has been "regularly involved in the buying and selling of units" in the Brookhurst Village Condominiums community.

According to the minutes of the meeting, plaintiff "started talking to the public saying that the Board Members were not doing their job right and that it was time for a change, she also thank[ed] the homeowners for their support." Plaintiff stated defendant was a "dictator" who had not taken care of the association's money and had not properly handled the finances. Plaintiff also said that the association was "missing funds." There is no evidence that plaintiff's statements about defendant were true. Defendant asserted in his declaration in support of the anti-SLAPP motion: "[Plaintiff]'s accusations were lies." In the opposition, plaintiff did not produce any evidence or argument challenging defendant's statement.

Defendant stated he felt he had to defend himself. He further stated: "I stood up and asked her a question. I asked her what happened to the $100 rebate check from Staples that the Association was supposed to get when it purchased a fax machine about a year earlier, when she was President of the Association's board of directors." Defendant explained: "I knew that she signed the Association check that was used to purchase that fax machine. She also filled out the paperwork for the $100 rebate. On that paperwork, she put her home address, not the Association's address. I explained all that to the room. [Plaintiff]'s response to my question was: 'Viva la Revolucion!' "

In his declaration, defendant further explained he "researched the financial records for the Association" and had "not seen anything that indicates $100 was deposited into the Association's account around the time the rebate for the fax machine would have arrived." He stated, "[t]he records indicate the Association did not receive the $100 rebate" and plaintiff "apparently took the $100 rebate for herself." Defendant further stated he asked plaintiff about the rebate "because it was important information for the homeowners to know before they voted. [Plaintiff] was campaigning on behalf of her friends. The homeowners needed to know how credible [plaintiff] was and how unreliable her recommendations were. It also was important because she was accusing me of financial malfeasance, when in fact she was guilty of exactly that." He asserted, "I did not make statements about [plaintiff] out of malice or an evil intent. I wanted to tell the homeowners the truth, and that is what I did."

Plaintiff opposed the anti-SLAPP motion and supported her opposition with her own declaration and that of Reyna Martinez.[3] Martinez's declaration stated that she had attended the September 17, 2009 meeting, and that "[d]uring the meeting [defendant], a then current board member and candidate for reelection, took the floor and I heard him state that [plaintiff] had stolen money from the association. I also heard him say that [plaintiff] had

---

[3] Plaintiff does not make any argument on appeal as to the evidentiary objections she asserted in opposing the anti-SLAPP motion.

committed fraud against the association." Martinez also declared she had "attended the entire meeting and during that time [defendant] never gave any information or details to the members present to support his accusations of fraud and theft against [plaintiff]."

Plaintiff's declaration stated that on September 17, 2009, she was not a resident, a member of the association, a member of the association's board of directors, or a candidate for election to the association's board of directors. In her declaration, plaintiff asserted: "I have never stolen funds from, nor defrauded, the Brookhurst Village Condominiums" and "have never been investigated, questioned, criminally charged, tried and/or convicted for any theft or fraud involving any conduct involving Brookhurst Village."

The trial court denied the anti-SLAPP motion. The court's minute order stated: "Defendant failed to meet his initial burden of proving that the alleged defamatory statement arose out of protected activity as defined in [section] 425.16[, subdivision ](e). Although the alleged defamatory statement was made in a public forum ([the association's] meeting to elect the board of directors), defendant failed to show that the alleged defamatory statement was made in connection with an issue of public interest. [Section] 425.16[, subdivision ](e)(3). Defendant concedes that he made the alleged statement in order to defend himself. The plaintiff was no longer a resident of the [association] nor was she up for election to the board."

Defendant appealed.

## DISCUSSION

### I.

### SECTION 425.16 AND STANDARD OF REVIEW

■ Section 425.16 provides for a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken

'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) " 'The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue.' " (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928 [116 Cal.Rptr.2d 187].) To establish a probability of prevailing on a claim, " 'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

We independently review the trial court's order denying the anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 [46 Cal.Rptr.3d 606, 139 P.3d 2].) " 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Id.* at p. 326.) We further observe that the anti-SLAPP statute is to be broadly construed. (§ 425.16, subd. (a).)

## II.

### DEFENDANT MET HIS BURDEN OF DEMONSTRATING THE STATEMENTS UNDERLYING PLAINTIFF'S DEFAMATION CLAIM AROSE FROM PROTECTED ACTIVITY UNDER SECTION 425.16, SUBDIVISION (e)(3).

█ A defendant can meet the burden of making a threshold showing that a cause of action is one arising from protected activity by demonstrating the act underlying the plaintiff's cause of action falls within one of the four categories identified in section 425.16, subdivision (e). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) The third category identified in section 425.16, subdivision (e)(3) involves statements or writings made "in a place open to the public or a public forum," and that concern a matter of public interest. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117–1118 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

## A.

*Defendant Established the Statements Underlying Plaintiff's Defamation Claim Were Made in a Public Forum Within the Meaning of the Anti-SLAPP Statute.*

■ "A 'public forum' is traditionally defined as a place that is open to the public where information is freely exchanged." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 475 [102 Cal.Rptr.2d 205] (*Damon*).) Homeowners association board meetings constitute a public forum within the meaning of the anti-SLAPP statute because they "serve[] a function similar to that of a governmental body. As our Supreme Court has recognized, owners of planned development units ' "comprise a little democratic subsociety . . . ." ' [Citations.] In exchange for the benefits of common ownership, the residents elect a[] legislative/executive board and delegate powers to this board. This delegation concerns not only activities conducted in the common areas, but also extends to life within ' "the confines of the home itself." ' [Citation.] A homeowners association board is in effect 'a quasi-government entity paralleling in almost every case the powers, duties, and responsibilities of a municipal government.' [Citation.]" (*Damon, supra,* at p. 475.)

Furthermore, "[b]ecause of a homeowners association board's broad powers and the number of individuals potentially affected by a board's actions, the Legislature has mandated that boards hold open meetings and allow the members to speak publicly at the meetings. [Citations.] These provisions parallel California's open meeting laws regulating government officials, agencies and boards. [Citation.] Both statutory schemes mandate open governance meetings, with notice, agenda and minutes requirements, and strictly limit closed executive sessions. [Citation.]" (*Damon, supra,* 85 Cal.App.4th at p. 475.)

In *Damon, supra,* 85 Cal.App.4th at page 475, the appellate court concluded the homeowners association board of directors meetings met the statutory definition of a public forum. The appellate court explained that while serving "a function similar to that of a governmental body," the board of directors in *Damon* "played a critical role in making and enforcing rules affecting the daily lives of [the homeowners association community's] residents. Those rules were promulgated at Board meetings, which were televised, open to all Association members, and served as a place for open discussion among directors and members. Approximately 3,000 residents were affected by the policies adopted at Board meetings. On this record, the Board meetings were 'public forums.' " (*Ibid.*)

The association here, as the homeowners association in *Damon*, necessarily functions similar to a governmental body; the association's board of directors is significant in the promulgation and enforcement of rules which affect the daily lives of Brookhurst Village Condominiums's residents. True, the association was smaller than the homeowners association discussed in *Damon* and perhaps technologically less sophisticated as it held its meetings in a clubhouse, and its meetings were most likely untelevised. Nevertheless, the impact the association and its leadership had on all the residents of Brookhurst Village Condominiums was not any less significant. Furthermore, the allegedly defamatory statements, here, were made at the association's annual meeting at which directors were to be elected. The meeting was open to all homeowners and authorized representatives of homeowners, who would have to abide by the results of the election. The decisions of elected directors would affect all members of the association. On this record, the association's September 17, 2009 annual meeting and election of board of directors constituted a public forum within the meaning of section 425.16, subdivision (e)(3).

B.

*The Allegedly Defamatory Statements Concerned an Issue of Public Interest Within the Meaning of Section 425.16, Subdivision (e)(3).*

██ Defendant has also demonstrated the allegedly defamatory statements concerned an issue of public interest because they were connected to his qualification for reelection to the association's board of directors. "The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. [Citations.] ' "[M]atters of public interest . . . include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." ' [Citation.]" (*Damon, supra,* 85 Cal.App.4th at p. 479.)

In *Damon, supra,* 85 Cal.App.4th at pages 479–480, the appellate court stated: "Although the allegedly defamatory statements were made in connection with the management of a private homeowners association, they concerned issues of critical importance to a large segment of our local population. 'For many Californians, the homeowners association functions as a second municipal government . . . .' [Citation.] Given the size of the

[homeowners association] community, the nature of the challenged statements as involving fundamental choices regarding future management and leadership of the Association, and our Legislature's mandate that homeowner association boards be treated similar to governmental entities, the alleged defamatory comments involved 'public issues' within the meaning of the anti-SLAPP statute." (See *Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, 1117 [123 Cal.Rptr.3d 251] [homeowner's complaints about homeowners association's actions were a matter of public interest within the meaning of § 425.16].)[4]

■ In particular, statements made in connection with elections to the board of directors constitute a public issue in that such elections affect all members of the homeowners association and "concern[] a fundamental political matter—the qualifications of a candidate to run for office." (*Damon, supra,* 85 Cal.App.4th at p. 479.) " 'The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech. "Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment." ' " (*Ibid.*; *Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 673 [64 Cal.Rptr.2d 222] (*Macias*) ["Where, as here, a candidate speaks out on issues relevant to the office or the qualifications of an opponent, the speech activity is protected by the First Amendment."].)

We apply the governing standard of review discussed *ante*, and accept as true the evidence favorable to plaintiff. We therefore assume, for purposes of our analysis, that defendant stated plaintiff had stolen money from the association and defrauded the association, and did not specifically explain at that time the basis for those alleged statements. To determine whether the alleged statements concerned a public interest, we must consider the context in which they were made.

Defendant produced evidence, unchallenged by plaintiff, showing that the alleged statements were made directly in response to plaintiff's statements that defendant was not taking care of the association's money or properly handling its finances and that the association was missing funds. Defendant's

---

[4] In the respondent's brief, plaintiff cites *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122 [2 Cal.Rptr.3d 385], in support of her argument that the allegedly defamatory statements were not connected to a public issue within the meaning of section 425.16, subdivision (e)(3). *Weinberg v. Feisel, supra,* 110 Cal.App.4th at page 1126, is distinguishable from this case in that it involved alleged defamation in the context of a national token collectors association, not in the context of a homeowners association meeting and election. As discussed *ante*, the homeowners association is unique in how it " 'functions as a second municipal government.' " (*Damon, supra,* 85 Cal.App.4th at p. 479.)

alleged statements that plaintiff had stolen money from the association and defrauded it were responsive to plaintiff's accusations against him.

Defendant's statements challenged the credibility of plaintiff who at that time was serving as the authorized representative of Ibarra, one of defendant's opponents in the election that was to be held that night. Plaintiff claimed to have "power of attorney" for Ibarra, and Ibarra left the meeting to enable plaintiff to act as his official representative. Challenging plaintiff's credibility in this context served to communicate to the association's members to use caution before relying on plaintiff's vouching in Ibarra's favor and other candidates' favor and her accusations against defendant.

Citing *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107 [1 Cal.Rptr.3d 501] (*Du Charme*), plaintiff argues the trial court correctly found the allegedly defamatory statements "were unconnected to any ongoing controversy, debate or discussion," as they "pertained to [plaintiff]'s alleged past conduct while on the Board." In *Du Charme*, a union trustee posted a statement on the union's Web site that the plaintiff had been removed from office for financial mismanagement. (*Id.* at p. 118.) The appellate court commented that although the statement "was presumably of interest to the membership (else why post it at all?)" it was "unconnected to any discussion, debate or controversy. [The plaintiff]'s termination was a fait accompli; its propriety was no longer at issue. Members of the local were not being urged to take any position on the matter. In fact, *no* action on their part was called for or contemplated. To grant protection to mere informational statements, in this context, would in no way further the statute's purpose of encouraging *participation* in matters of public significance [citation]." (*Ibid.*)

The *Du Charme* court distinguished that case from *Damon, supra,* 85 Cal.App.4th 468 and *Macias, supra,* 55 Cal.App.4th 669, stating: "As previously noted, the allegedly defamatory statements in both cases were made not only in connection with an issue of interest to the members of the particular community, but also in the context of an ongoing controversy, debate or discussion within that community—a decision about future association governance in the former, an election of officers in the latter. The statements in *Macias* were designed to persuade union members to vote against a particular candidate for union office. In *Damon*, the statements were calculated to persuade members of the homeowners association to change its method of governance. Thus protection of the statements at issue in *Damon*

and *Macias* serves the anti-SLAPP statute's purpose of encouraging *participation* in an ongoing controversy, debate or discussion." (*Du Charme, supra*, 110 Cal.App.4th at p. 118.)

This case is distinguishable from *Du Charme* because defendant's allegedly defamatory statements, though referring to plaintiff's supposed misconduct as past president, were connected to an ongoing controversy and debate. The statements were made directly in response to plaintiff's charges of financial mismanagement by defendant and in the context of plaintiff's and defendant's public debate at the annual homeowners election meeting. Plaintiff and defendant both sought votes in support of their respective positions. This debate constitutes classic protected activity within the anti-SLAPP statute.

In sum, the allegedly defamatory statements, under the circumstances, pertained to an issue of public interest as to the Brookhurst Village Condominiums community, within the meaning of section 425.16, subdivision (e)(3). As defendant carried his burden of showing that the statements underlying the defamation claim came within section 425.16, subdivision (e)(3), the burden shifted to plaintiff to show a probability of prevailing on her claim.

III.

PLAINTIFF DID NOT DEMONSTRATE A PROBABILITY OF PREVAILING
ON HER DEFAMATION CLAIM BECAUSE SHE FAILED TO PRODUCE
EVIDENCE OF MALICE.

■ Plaintiff sued defendant for defamation in the form of slander. Civil Code section 46 defines slander, in relevant part, as "a false and unprivileged publication, orally uttered . . . which: [¶] 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime . . . ."

■ "When a defamation action is brought by a public figure, the plaintiff, in order to recover damages, must show that the defendant acted with actual malice in publishing the defamatory communication." (*Denney v. Lawrence* (1994) 22 Cal.App.4th 927, 933 [27 Cal.Rptr.2d 556].) "A person may become a public figure in several different ways. Some persons have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts. [Citations.]" (*Id.* at p. 934.) A person may also become a " 'limited' purpose public figure[]." (*Ibid.*)

As explained *post*, plaintiff failed to carry her burden of demonstrating a probability of prevailing on her defamation claim because the evidence showed she was a limited purpose public figure at the time the allegedly defamatory statements were made and she failed to make any showing that the defamatory statements were made with malice.

## A.

### *Plaintiff Was a Limited Purpose Public Figure at the Time the Allegedly Defamatory Statements Were Made.*

In *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1577 [27 Cal.Rptr.3d 863], the appellate court explained: "The limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues." (See *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 253 [208 Cal.Rptr. 137, 690 P.2d 610].) *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 845–846 [52 Cal.Rptr.2d 831], sets forth the elements that must be present in order to characterize a plaintiff as a limited purpose public figure. First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. (*Id.* at p. 845.) Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. (*Ibid.*) In this regard, it is sufficient that the plaintiff " 'attempts to thrust himself into the public eye.' " (*Id.* at pp. 845–846.) Finally, " 'the alleged defamation must have been germane to the plaintiff's participation in the controversy.' " (*Id.* at p. 846.)

Under the facts of this case, the analysis for determining a public issue within the meaning of section 425.16, subdivision (e)(3) and the analysis used to determine the public controversy element of the limited purpose public figure determination are very similar. The public controversy here was the contested board of directors election that was scheduled to occur shortly after the allegedly defamatory statements were made. Plaintiff's active campaigning and conduct at the meeting demonstrated the public debate over who should be elected at that meeting. There is no dispute that the election results had foreseeable and substantial ramifications for all the homeowners of Brookhurst Village Condominiums—beyond those homeowners who attended the meeting or voted in the election.

The record is clear that plaintiff had actively campaigned in favor of a slate of candidates and against defendant. She prepared a flyer showing her support. She obtained a power of attorney from one of the candidates to appear as his representative at the meeting and continued to campaign during

the meeting. It is evident plaintiff engaged in voluntary acts through which she hoped to influence the outcome of the election.

Defendant's allegedly defamatory statements that plaintiff stole money from the association and defrauded it were directly responsive to plaintiff's accusation that defendant had mismanaged the association's funds and the concomitant inference that he was responsible for the association's missing funds. Thus, "the alleged defamation [was] germane to the plaintiff's participation in the controversy." (*Ampex Corp. v. Cargle, supra*, 128 Cal.App.4th at p. 1577.)

For all these reasons, the elements for a limited purpose public figure have been satisfied and plaintiff is a limited purpose public figure. Accordingly, plaintiff needed to demonstrate a probability of proving malice.

### B.

*Plaintiff Failed to Carry Her Burden of Showing a Probability of Prevailing on the Merits of Her Defamation Claim Because She Did Not Make a Prima Facie Showing of Malice.*

To establish malice, plaintiff was required to show that defendant made the allegedly defamatory statements with knowledge, or reckless disregard, of the falsity of the statements. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 718 [3 Cal.Rptr.3d 623, 74 P.3d 726] ["Traditionally, malice has included not only deliberate falsehoods but also false statements made without reasonable grounds to believe them true."]; *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 246 [83 Cal.Rptr.2d 677].)

Plaintiff did not produce any evidence showing that defendant acted with malice. Defendant, on the other hand, explained in detail the basis for his belief plaintiff had pocketed a $100 rebate check that belonged to the association. In his declaration, defendant asserted that he knew plaintiff had signed the check purchasing a fax machine on behalf of the association, plaintiff completed the paperwork to receive a rebate in which she listed her home address, and the association never received the $100 rebate check. Plaintiff's opposing evidence did not address the rebate check. She did not otherwise show that defendant made the alleged statements with knowledge or reckless disregard of their falsity. Consequently, the anti-SLAPP motion should have been granted.

## DISPOSITION

The order of the trial court denying defendant's anti-SLAPP motion is reversed. The matter is remanded, and the trial court is directed to enter a new order granting the motion. Defendant shall recover costs on appeal.

O'Leary, Acting P. J., and Moore, J., concurred.