Filed 12/11/14  Chryssikos v. MCC Radio CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| PETER PAUL CHRYSSIKOS, JR., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MCC RADIO, LLC et al., <br><br> Defendants and Appellants. | G049831 <br><br> (Super. Ct. No. INC1109827) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Riverside County, Jeffrey L. Gunther, Judge.  (Retired judge of Sacramento Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Motion to receive additional evidence.  Motion for judicial notice.  Motions denied.  Order affirmed.

Mueller/Olivier/Whittaker, Nethery/Mueller/Olivier, Martin A. Mueller, Vincent R. Whittaker and Julie A. Rosser for Defendants and Appellants.

Slovak, Baron, Empey, Murphy & Pinkney, and Shaun M. Murphy for Plaintiff and Respondent.

\*          \*          \*

Plaintiff Peter Paul Chryssikos, Jr., filed a complaint against defendants MCC Radio, LLC, erroneously sued as Morris Communications Group, LLC, doing business as Desert Radio Group, Lee Rayburn, Jay White, and John McMullen for defamation, invasion of privacy, and intentional infliction of emotional distress. The trial court denied defendants' special motion to strike these causes of action under the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. (Code Civ. Proc., § 425.16; all further undesignated statutory references are to this code.)

Defendants contend (1) the court erroneously found plaintiff was not a limited purpose public figure required to establish malice; (2) even if plaintiff was a private figure, no reasonable person could find they acted with malice; and (3) plaintiff failed to carry his burden of establishing a probability of success on his causes of action. Without deciding whether plaintiff was a private or limited purpose public figure, we conclude he has satisfied his burden of showing malice in opposition to defendants' anti-SLAPP motion. We affirm the order and deny as unnecessary to our decision both plaintiff's motion to receive additional evidence on appeal and defendants' motion for judicial notice.

## FACTS AND PROCEDURAL BACKGROUND

The genesis of this action is an article published in the Desert Star Weekly about a business operating out of the home of Karl Baker, a then-sitting councilman for the City of Desert Hot Springs (City), having received $40,000. The business was an alarm-monitoring company owned by plaintiff, who lived with Baker and had a contract with the City for alarm-monitoring and security services.

The day after the article was published, Rayburn, a local radio talk show host, began a series of broadcasts themed "Who is Pete Chryss?" In them, Rayburn

accused plaintiff of, among other things, being investigated by the FBI for child pornography, committing credit card fraud and identity theft, making death threats, defrauding the City, as well as failing to provide child support and physically abusing his child's mother approximately 20 years ago.

Plaintiff sued Rayburn, the radio station he worked for (MCC Radio), its general manager (White) and its director of news, talk and sports programming (McMullen) for defamation per se of a private matter of private and public concern, invasion of privacy for disclosure of private facts, invasion of privacy for appropriation of name for a commercial purpose, and intentional infliction of emotional distress. Defendants moved to strike the complaint under section 426.16. The court denied the motion, finding plaintiff was not a limited purpose public figure because he had not thrust himself into the public eye.

DISCUSSION

*1.0 Introduction*

Under section 425.16, subdivision (b)(1), a cause of action against a person arising from an act in furtherance of a constitutionally protected right of free speech may be stricken unless the plaintiff establishes the probability of prevailing on the claim. The statute "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67.)

We review the court's ruling de novo, considering ""the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.""" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.) "This is because the anti-SLAPP statute does not require the plaintiff '"to *prove* the specified claim to the trial court"; rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim.' . . . [¶] 'If the plaintiff "can show a probability of prevailing on *any part of* [*his or her*] *claim*, the cause of action is not meritless" and will not be stricken; "once a plaintiff shows a probability of prevailing on any part of [his or her] claim, the plaintiff *has established* that [his or her] cause of action has some merit and the entire cause of action stands.""" (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379 (*Burrill*).)

*2.0 Protected Activity*

In the first step of the anti-SLAPP analysis, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) The trial court found defendants' conduct fell within this category.

Defendants thus focus on the ruling on the second step, contending the court erred in ruling plaintiff had met his burden to show a probability of prevailing.

Because we disagree, we need not address plaintiff's assertion that defendants' statements did not concern an issue of public interest.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 [issues unnecessary to resolution of appeal need not be addressed].)

### 3.0  Probability of Prevailing

#### 3.1  Defamation Per Se

Plaintiff's first two causes of action are for defamation per se. "[D]efamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)  It "has two forms, libel and slander. [Citation.]  Defamatory publications that are made 'by writing, printing, picture, effigy, or other fixed representation to the eye,' are considered libel.  [Citation.]  Slander involves defamatory publications that are 'orally uttered,' and also includes 'communications by radio or any mechanical or other means.'" (*Burrill*, *supra*, 217 Cal.App.4th at p. 382.)  "[C]ertain slanderous statements are considered slanderous per se, and actionable without proof of special damage . . . 'including statements (1) charging the commission of crime or (2) tending directly to injure a plaintiff in respect to the plaintiff's [profession, trade, or] business by imputing something with reference to the plaintiff's [profession, trade, or] business that has a natural tendency to lessen its profits.'" (*Ibid*.)  To establish a defamation claim, a plaintiff who is a public figure or a limited purpose public figure also "'must show that the defendant acted with actual malice in publishing the defamatory communication.'" (*Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1091 (*Cabrera*).)

Here, one of the alleged defamatory statements made by defendants implicitly charged plaintiff with the crime of making death threats (Pen. Code, § 422,

5

subd. (a)) against the editor and publisher of the Desert Star Weekly for initiating the broadcasts. Rayburn stated over the radio: "You see, on Desert Star Weekly's homepage today . . . there is a story about the . . . editor and publisher . . . receiving numerous explicit death threats . . . . [B]ut, if the actual reporters doing the reporting and fearing for their safety and receiving explicit death threats that you can read right now . . . as a result of actually just being the messenger . . . why isn't anybody acting on this? A convicted felon [reasonably interpreted as referring to plaintiff] who is operating security systems for the City of Desert Hot Springs? Out of the home of a sitting city councilmember? A convicted felon who would actually install, according to his former employer, a security system in the home of a city manager? And then, the place where this investigation started, with an open record's request from the Desert Star Weekly, now receiving explicit death threats . . . ."

The implication is defamatory per se. It was also false because Rayburn knew Charlie Hinkel had made the death threats, not plaintiff.

Defendants contend plaintiff was a limited purpose public figure required to establish malice. Assuming without deciding that he was, he has sufficiently shown malice occurred. "In opposing an anti-SLAPP motion, a defamation plaintiff need not establish malice by clear and convincing evidence, the standard applicable at trial. Rather, [he] must meet [his] minimal burden by introducing sufficient facts to establish a prima facie case of actual malice; in other words, [he] must establish a reasonable probability that [he] can produce clear and convincing evidence showing that the statements were made with actual malice." (*Young v. CBS Broadcasting, Inc.* (2012) 212 Cal.App.4th 551, 563.)

Actual malice can be established by, among other things, proof of "'a defendant's recklessness or of his knowledge of falsity.'" (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 257.) "'The question whether the evidence in the

6

record in a defamation case is sufficient to support a finding of actual malice is a question of law.'" (*Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 17 [110 S.Ct. 2695, 111 L.Ed.2d 1] (*Milkovich*).)

During oral argument, plaintiff asserted this standard was met by the implication about the death threats because at the time Rayburn made the statements he had actual knowledge that plaintiff did not make them. Rayburn had the article about the death threats in his possession the day before the broadcast. The article specifically identified Hinkel as the source of the death threats. Yet, Rayburn implied plaintiff was the one who made the threats and never told his audience that it was Hinkel who had done so.

Defendants responded that Rayburn did not specifically accuse plaintiff of making the death threats. But, "the privilege of fair comment [does] not extend to 'a false statement of fact, whether it was expressly stated or implied . . . .'" (*Milkovich*, *supra*, 497 U.S. at p. 19.)

Defendants also claimed Rayburn's statements constituted nothing more than hyperbole. We disagree. The hallmark of protected rhetorical hyperbole is that it does not imply a provably false factual assertion. (*Milkovitch*, *supra*, 497 U.S. at p. 21; *Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1048.) Saying someone "perjured himself in a judicial proceeding" is "sufficiently factual to be susceptible of being proved true or false." (*Milkovitch*, at p. 21.) It "is not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury." (*Ibid*.) Neither is implying that plaintiff made death threats against a newspaper editor and publisher. In fact, the evidence presented affirmatively showed Rayburn *knew* plaintiff had *not* made the death threats but nevertheless implied that he had. "The dispositive question [is] whether a

reasonable factfinder could conclude that the statements in [Rayburn's broadcast] imply an assertion that" plaintiff made the death threats. (*Ibid*.) The answer is yes.

Plaintiff thus met his minimal burden of making ""'"a sufficient prima facie showing of facts to sustain a favorable judgment'"'"" on his defamation per se claims. (*Burrill*, *supra*, 217 Cal.App.4th at p. 379.) Because he demonstrated the "cause[s] of action ha[ve] some merit[,] . . . the entire cause[s] of action stand[ and we] . . . need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." (*Mann v. Quality Old Time Service, Inc*. (2004) 120 Cal.App.4th 90, 106.)

### *3.2 Invasion of Privacy – Public Disclosure of Private Facts*

The tort of invasion of privacy in the publication of private facts requires "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." (*Diaz v. Oakland Tribune, Inc*. (1983) 139 Cal.App.3d 118, 126.)

The private facts plaintiff claims defendants publicly disclosed was his "sexual relationship with Carrie Tosi Johnson [almost 20 years ago], their child out of wedlock, and that there was a domestic violence issue." We agree the relationship between Johnson and plaintiff was private and not one in which the public had a legitimate concern. A reasonable person would find the undisputed public release of such information offensive and objectionable. And although the domestic violence issue was arguably a matter of public concern, it stems from the *private* relationship between Johnson and plaintiff. This suffices for a prima facie showing the claim has merit.

8

Defendants claim the statements were newsworthy because plaintiff's fitness to perform security related services for the City was at issue. But they do not explain how plaintiff's relationship with Johnson related to that.

*3.3  Invasion of Privacy – Appropriation of Name for Commercial Purpose*

Civil Code section 3344, subdivision (a) provides that "[a]ny person who knowingly uses another's name . . . in any manner . . . for purposes of advertising  . . . without such person's prior consent, . . . shall be liable for any damages sustained by the person or persons injured as a result thereof."

Defendants assert their conduct was protected under Civil Code 3344, subdivision (d), which provides that "use of a name . . . in connection with any news . . . shall not constitute a use for which consent is required under subdivision (a)." But plaintiff's cause of action is not based on the use of his name in connection with news broadcasts. Rather, it was in connection with a promotional campaign for their radio station in which Rayburn stated "all you have to do is stop by and ask, 'Who is Pete Chryss?'  Keep that – that's your *key* phrase:  'Who is Pete Chryss?' . . . [W]e've got a complimentary buffet for two for . . . anybody who stops by and asks, 'Who is Pete Chryss?'"  By doing so, defendants used plaintiff's name without consent for advertising purposes.

*3.4  Intentional Infliction of Emotional Distress*

The elements of a cause of action for intentional infliction of emotional distress are:  "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate

9

causation of the emotional distress by the defendant's outrageous conduct. [Citations.] . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209.)

Defendants' statements about plaintiff satisfy the requirement of outrageous conduct for purposes of the anti-SLAPP motion. Although defendants argue the facts are insufficient because malice has not been shown, we have already concluded otherwise in this opinion. Plaintiff thus met his burden to establish a probability he will prevail.

DISPOSITION

The order is affirmed. Plaintiff shall recover his costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.

10