Filed 9/14/22  Mojtahedi v. Carpenter CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL MOJTAHEDI et al., | |
| Plaintiffs and Respondents, | G059691 |
| v. | (Super. Ct. No. 30-2018-00998174) |
| GREG CARPENTER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed.

London Fischer, Nicholas W. Davila and Jeffrey W. Griffith; Azar Law Group, David E. Azar; Benedon & Serlin, Gerald M. Serlin and Wendy S. Albers for Defendant and Appellant.

Hejazi Law Group, Ashkan Hejazi; Ezner, Chang & Boyer, Andrew N. Chang and Kevin K. Nguyen for Plaintiffs and Respondents.

\*        \*        \*

Plaintiffs Michael Mojtahedi and Mojdeh Mojtahedi along with defendant Greg Carpenter are homeowners in a condominium complex in Laguna Beach, California. Plaintiff Mojdeh Mojtahedi and defendant concurrently served on the homeowners association's board of directors. Plaintiffs sued defendant, the homeowners association, and other individual board members for breach of written contract, enforcement of equitable servitudes, breach of fiduciary duty, declaratory relief, and injunctive relief. Among other things, the complaint alleges defendant wrongfully used funds from the homeowners association for projects and repairs benefiting his units and failed to disclose his personal interests. The complaint also alleges defendant misrepresented some of the improvements as emergency repairs. The relevant repairs occurred when defendant was president of the board of directors.

Defendant filed a special motion to strike (anti-SLAPP motion) under Code of Civil Procedure section 425.16.[1] He asserted plaintiffs' claims arose, in part, from protected activity because some of the allegations concerned his statements or voting at board meetings. He also argued plaintiffs could not establish a likelihood of success on their claims.

The court denied the anti-SLAPP motion, finding plaintiffs' claims did not arise from the protected conduct of voting. Instead, the court found plaintiffs' claims arose from defendant's "failure to disclose a number of material facts to benefit himself, and the spending of large sums of the Association's money and reserves in violation of the project documents, state law, or based upon [his] fiduciary duty to members of the association." The court concluded any voting allegations were incidental to the alleged wrongdoing. Defendant appealed.

---

[1] All further statutory references are to the Code of Civil Procedure.

After reviewing the record de novo, we conclude the court properly denied the anti-SLAPP motion. As we explain below, plaintiffs' claims did not arise from protected activity. We therefore affirm.

## FACTS

*Relevant Background*

The Laguna Sands condominium complex (Laguna Sands) consists of 32 units on the waterfront in Laguna Beach. The complex is governed by Laguna Sands, Inc. (HOA), a homeowners association. Each homeowner is a member of the HOA. The HOA's board of director's (the Board) consists of five directors and one alternate director.

In 2009, plaintiffs purchased one of the units at Laguna Sands. Defendant also owns a unit at Laguna Sands and previously owned a second unit. Both plaintiff Mojdeh Mojtahedi and defendant concurrently served on the Board during the time period relevant to the instant case. Defendant served as the president of the Board from January 2016 to December 2018.

*The Complaint*

Plaintiffs initiated the instant action in June 2018. In September 2019, plaintiffs filed a second amended complaint against defendant as well as the HOA and two other Board members who are not parties to this appeal.[2] The complaint generally alleges defendant was involved in funneling HOA funds to projects and repairs benefiting his units or common areas adjacent to his units.

---

[2] Plaintiffs subsequently filed a third amended complaint after defendant filed his anti-SLAPP motion. Because the anti-SLAPP motion is directed at the second amended complaint and the parties solely focus on the second amended complaint, we need not address the third amended complaint.

In May 2017, defendant allegedly called a telephonic Board meeting for emergency repairs to the walkway adjacent to his unit. In July 2017, he called another telephonic Board meeting for emergency repairs to the wall on the second floor. He also "arm-twisted and manipulated the Board" to approve a new elevator. In December 2017, the Board approved the repair and replacement of the hallway wall immediately adjacent to defendant's unit. Defendant also unilaterally approved a change to the color and texture of the hallway walls but failed to secure the proper permits for these improvements. In February 2018, the Board approved deck coating and waterproofing for the hallway next to defendant's unit. In April 2018, defendant unilaterally approved work on a vertical drain and vent lines for his unit. He also allegedly approved multiple plumbing repairs that benefited his units. Finally, in July 2018, he demanded an emergency repair of the pool deck. The complaint alleges the remodel was intended to increase the sale value of defendant's unit, which overlooked the pool deck. In total, the complaint claims defendant induced the Board to approve approximately $150,000 in improvements directly benefiting defendant or his units.

The complaint also alleges the repairs were capital improvements requiring majority homeowner approval under the HOA's declaration of covenants, conditions, and restrictions (CC&Rs). But defendant wrongfully characterized the improvements as "emergency" repairs to bypass the CC&Rs and bylaws. He further failed to disclose his own interest in the projects or recuse himself from voting on the improvements. Finally, the complaint alleges defendant bypassed the bidding process for construction work by hiring his friends to do the work.

Based on the above allegations, the complaint alleges causes of action for breach of written contract, enforcement of equitable servitudes, breach of fiduciary duty, declaratory relief, and injunctive relief.

4

*The Anti-SLAPP Motion*

In 2019, defendant filed an anti-SLAPP motion seeking to strike certain portions of the complaint. The motion specifically sought to strike allegations arising from statements defendant made or how he voted at the Board meetings. Defendant argued these allegations arose from protected activity because the statements and decisions occurred in a public forum and pertained to issues of public interest within the condominium association community. He also argued plaintiffs could not establish a likelihood of success on their claims because his decisions were protected by the business judgment rule.

The court denied the anti-SLAPP motion. Citing *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722 (*Talega*), the court noted a cause of action generally does not arise from protected activity just because protected activity may have triggered the cause of action. The court then reasoned defendant's "alleged voting as a Board member was incidental to the alleged wrongdoing, i.e., the improper spending of large sums of HOA funds for projects that either directly, or indirectly benefited [him] personally." While plaintiffs' claims involved the act of voting, the court held the claims did not arise from defendant's act of voting with the Board. Instead, the court emphasized plaintiffs' claims arose from defendant's "failure to disclose a number of material facts to benefit himself, and the spending of large sums of the Association's money and reserves in violation of the project documents, state law, or based upon [his] fiduciary duty to members of the association." Because the claims did not arise from the protected conduct of voting, the court held any specific allegations likewise were incidental to the claims. The court did not address whether plaintiffs had established a probability of success on the merits.

5

DISCUSSION

Defendant contends the court erred by denying his anti-SLAPP motion. He argues plaintiffs' claims arise, in part, from protected activity because plaintiffs' challenge is based on how he voted and expressed himself on matters of public interest. In other words, defendant claims plaintiffs' pleaded mixed causes of action resting on allegations of multiple acts, including some of which were protected activity. He also argues plaintiffs cannot prevail on the merits because his decisions were protected by the business judgment rule under Corporations Code section 7231 and the challenged repair decisions did not require majority homeowner approval.

Contrary to defendant's assertion, plaintiffs' claims do not arise from defendant's protected activities. While defendant identifies some allegations that involved the act of voting, those allegations were incidental to the alleged wrongdoing — defendant's withholding of information and self-dealing. Other allegations regarding defendant's misrepresentations about emergency repairs were not made in connection with a public issue or an issue of public interest because the record does not show there was an ongoing controversy, dispute, or discussion about the issue. We therefore affirm.

*Applicable Law and Standard of Review*

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike claims 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883-884.)

The trial court conducts a potentially two-step inquiry to evaluate an anti-SLAPP motion. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009

6

(*Bonni*).) First, the court must decide whether the defendant has met its burden of establishing the plaintiff's claim *arises from* protected activity in which the defendant has engaged. (*Ibid.*) Second, assuming defendant has met its burden, the court determines whether the plaintiff has established "there is a probability . . . the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) In meeting this burden, "the plaintiff must show the claim has 'at least "minimal merit."'" (*Bonni*, at p. 1009.)

We review the court's ruling de novo, applying the legal principles discussed above. (*Falcon Brands, Inc. v. Mousavi & Lee, LLP* (2022) 74 Cal.App.5th 506, 518.)

*Protected Activity*

In determining whether plaintiffs' claims arise from protected activity, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) "At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.) "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491.)

If a plaintiff pleads mixed causes of action based on allegations of both protected and unprotected activity, "analysis of an anti-SLAPP motion is not confined to evaluating whether [the] entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.) Instead, courts

7

analyze each act supplying a basis for relief to determine whether the acts are protected. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 393, 395 (*Baral*).) "So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims." (*Bonni*, at p. 1010.) But "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, at p. 394.)

The anti-SLAPP statute identifies four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or on an issue of public interest." (§ 425.16, subd. (e)(1)-(4).)

Relying on the latter two categories, defendant insists plaintiffs' claims are based on how he voted and what he said on matters of public interest (common area maintenance and repair work) at seven Board meetings. (§ 425.16, subd. (e)(3)-(4).) He points to the following allegations in the complaint: (1) defendant "made numerous decisions and votes . . . that were influenced by his interests rather than the interests of the HOA and Members"; (2) defendant "did not disclose his . . . interests . . . in numerous votes and decisions made by the Board and then failed to recuse himself from discussions and votes on those issues"; (3) defendant "used his status as President to actively influence those same votes"; (4) defendant "obtained the necessary votes through a storm of misrepresentations, threats of lawsuits against the Board, arm-twisting, and deceit"; (5) defendant breached the CC&Rs and bylaws by engaging in wrongful conduct, which

8

included "wrongfully characterizing non-emergency capital improvements as 'emergency' repairs"; and (6) defendant breached his duties by "intentionally misrepresenting the existence of an 'Emergency Situation' as defined by the CC&Rs." The first four categories involve the act of voting while the latter two categories concern defendant's alleged misrepresentations regarding emergency repairs. We address each in turn.

### A. Voting Allegations

While some of the complaint's allegations involved the act of voting at Board meetings, "voting is not *per se* protected activity." (*Talega*, *supra*, 225 Cal.App.4th at p. 729, italics added.) Indeed, these allegations appear in two short paragraphs under the "introduction" section of the complaint's background allegations. They merely provide context for defendant's wrongful expenditure of HOA funds for projects that benefited him personally and for his failure to disclose material facts. In other words, plaintiffs' claims could be asserted without reference to defendant's voting.

For example, in the fifth cause of action for breach of fiduciary duty, the complaint emphasizes defendant breached his duties "by using his position as a Board member to direct a substantial amount of HOA funds to improve his units or common areas immediately adjacent to his units." The complaint also alleges defendant breached his duties by "repeatedly hir[ing] his friends to perform repairs and improvements" and by failing "to disclose his . . . interest[s] . . . ." In the third and fourth causes of action for breach of contract and equitable servitudes, the complaint alleges defendant breached the HOA's governing documents by failing to follow proper procedures when signing contracts and before performing repairs. Neither defendant's voting nor any statements were the wrongful conduct at issue. The complaint references defendant's voting as context and evidence of his efforts to seek personal gain. Thus, defendant's voting as a Board member was incidental to the alleged wrongdoing.

9

*Talega*, *supra*, 225 Cal.App.4th 722 is instructive. In *Talega*, a homeowners association sued two developers and former board members who were appointed by the developers to serve on the board. (*Id.* at p. 726.) After riding and hiking trails were damaged by severe rain, the board members represented that the association was responsible and expended HOA funds to pay for the repairs. (*Ibid.*) Several years later, independent board members discovered the developers were financially responsible and the trails' failure was likely due to construction defects. (*Id.* at pp. 726-727.) The homeowners association filed suit, alleging causes of action for breach of fiduciary duty, fraud, constructive fraud, construction defect, negligence, and declaratory relief. (*Id.* at pp. 727-728.) According to the complaint, the former board members knew, but failed to disclose, the developers were responsible for the repairs and that the damages were caused by the developers' improper construction. (*Id.* at p. 726.) The board members filed an anti-SLAPP motion arguing the claims arose from protected statements they made at board meetings. (*Id.* at p. 729.)

Another panel of this court denied the anti-SLAPP motion. (*Talega, supra,* 225 Cal.App.4th at p. 735.) With respect to the breach of fiduciary duty, constructive fraud, and negligence claims, the court found the claims were "principally based on the Developer Board Members withholding information and improperly directing the expenditure of funds." (*Id.* at p. 728.) The court acknowledged "the expenditure of money may have been precipitated by a vote." (*Id.* at p. 729.) But the court emphasized "'the fact that protected activity may have triggered a cause of action does not necessarily mean the cause of action arose from the protected activity.'" (*Ibid.*) The court accordingly concluded the vote was merely incidental to the wrongful conduct. (*Id.* at pp. 729-730.) As to the fraud cause of action, the court held the issue was a "closer question." (*Id.* at p. 730.) But the court determined the claim was not based on protected activity because the alleged fraudulent statements were not made in connection with an

10

issue of public interest. (*Id.* at p. 734.) The court noted the issue of who would pay for repairing the trails was not subject to any controversy, dispute, or discussion. (*Ibid.*)

Like the complaint in *Talega*, the complaint here is not based on defendant's speech or petitioning activity. Instead, the complaint challenges defendant's withholding of information and self-dealing, which included the wrongful expenditure of HOA funds for projects that benefited him personally. Defendant's vote is not the wrong complained of, but instead "a step leading to some different act for which liability is asserted." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.)

Defendant suggests *Talega* is no longer controlling in light of *Baral*, *supra*, 1 Cal.5th 376. Not true. In *Baral*, our Supreme Court held an anti-SLAPP motion can be directed to specific allegations of protected activity within a cause of action that also includes allegations of unprotected activity. (*Baral*, at pp. 382, 392-393.) But the court reaffirmed "assertions that are 'merely incidental' or 'collateral' are not subject to" an anti-SLAPP motion. (*Id.* at p. 394.) Indeed, in *Bonni*, *supra*, 11 Cal.5th 995, our Supreme Court later clarified that not every court labeling its approach as a gravamen test has erred because courts can "determine whether particular acts alleged within the cause of action supply the elements of a claim [citation] or instead are incidental background . . . ." (*Id.* at p. 1012.)

Defendant's reliance on *Lee v. Silveira* (2016) 6 Cal.App.5th 527 (*Lee*) also is misplaced. In *Lee*, minority board members sued six other board members regarding the board's renewal of the association's management contract and the decisionmaking process at board meetings. (*Id.* at pp. 530-531, 542.) The defendants filed an anti-SLAPP motion arguing the declaratory relief claim was based on their decisions and statements at board meetings. (*Id.* at p. 531.) In reversing the trial court's denial of the anti-SLAPP motion, the court held the plaintiffs' claim arose from the defendants' voting at board meetings. (*Id.* at p. 545.) The court emphasized "it [was] significant" the

11

defendants were individual board members and not the homeowners association. (*Id.* at p. 542.)

Unlike the plaintiffs in *Lee*, plaintiffs are not suing defendant based on his individual vote. As discussed *ante*, defendant's vote was incidental to the claims, which concerned the violation of his fiduciary duties. The other cases defendant cites are distinguishable for the same reason. (*Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345; *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409.) We also note the plaintiffs in *Lee* did not sue the association. In the instant case, plaintiffs filed a derivative suit and named the HOA as a defendant.

For the foregoing reasons, any voting allegations were incidental and did not relate to any protected activity.

B. Allegations Regarding Misrepresented Emergency Repairs

In the first and second causes of action for breach of contract and enforcement of equitable servitudes, the complaint alleges defendant breached the HOA's governing documents and his duties by misrepresenting the improvements as emergency repairs. These allegations present a closer question.

As noted *ante*, section 425.16, subdivision (e)(3) applies to statements "made in a place open to the public or a public forum in connection with an issue of public interest." (*Ibid.*) Likewise, section 425.16, subdivision (e)(4) applies to any other conduct "in connection with a public issue or on an issue of public interest." (*Ibid.*)

Plaintiffs argue section 425.16, subdivision (e)(3) does not apply because defendant's written or oral statements are not at issue. We disagree. The complaint clearly alleges defendant made false representations and wrongful characterizations about the repairs. Regardless, we find section 425.16, subdivisions (e)(3) and (e)(4) do not

apply because the allegedly false statements were not made in connection with a public issue or an issue of public interest.

"In articulating what constitutes a matter of public interest, courts look to certain specific considerations, such as whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation], or 'affect[ed] a community in a manner similar to that of a governmental entity.'" (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 145-146.) Next, courts consider "what functional relationship exists between the speech and the public conversation about some matter of public interest." (*Id.* at pp. 149-150.)[3]

Turning to the context here, defendant was not a person or entity "in the public eye." (*FilmOn.com Inc. v. DoubleVerify Inc.*, *supra*, 7 Cal.5th at p. 146.) The issue also was not of interest to the public at large but to a limited portion of the public — namely, the HOA's 32 members. At a minimum, the speech or conduct therefore had to occur in the context of an ongoing controversy, dispute or discussion. (*Talega*, *supra*, 225 Cal.App.4th at p. 734, quoting *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119.) Defendant contends he satisfied this requirement because plaintiff Mojdeh Mojtahedi objected to the repairs. He also points to his declaration, which generally stated agenda topics were discussed at every Board meeting. But the record before us does not establish there was an ongoing controversy, dispute, or discussion surrounding defendant's characterization of the improvements as emergency repairs. Indeed, plaintiff Mojdeh Mojtahedi was not even present and did not

---

[3] *FilmOn.com Inc. v. DoubleVerify Inc.*, *supra*, 7 Cal.5th 133 concerned protected conduct under section 425.16, subdivision (e)(4). (*FilmOn.com Inc.,* at pp. 139-140.) Because section 425.16, subdivision (e)(3) similarly includes the requirement that a statement be "in connection with an issue of public interest," the court's consideration of context appears equally applicable to section 425.16, subdivision (e)(3).

vote on the emergency repairs at issue during the May 2017 and July 27, 2017 Board meetings. While it appears she voted against the emergency repairs at issue during the July 10, 2017 and July 2018 Board meetings, these two instances are insufficient to show there was an ongoing topic of debate about defendant's characterization of the improvements as emergency repairs. (*Talega*, *supra*, 225 Cal.App.4th at p. 734 [statement that homeowners association was liable for certain repairs did not involve a matter of public interest because "there was no controversy about the issue"].)

Defendant relies on distinguishable cases where the requirement of an ongoing controversy, dispute, or discussion was satisfied. In *Lee*, *supra*, 6 Cal.App.5th 527, the court emphasized the defendants' voting on a roofing project and management contract had divided the board. (*Id.* at pp. 542-543.) In *Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, the defamatory statements were made in the context of an election campaign and accused the plaintiff of stealing money from the homeowners association. (*Id.* at pp. 1081-1082.) Finally, in *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, the court found "there was an ongoing controversy, dispute, or discussion regarding the applicability of tree-trimming covenants to lots not expressly burdened by them, and the [homeowners association's] authority to enforce such covenants." (*Id.* at pp. 132-133.) Although the evidence was sparse, the court concluded that "the issue was an ongoing topic of debate between the board and homeowners, resulting in multiple hearings, letters, and several changes to the board's policy on the matter starting as early as 2002 and continuing up to the current dispute." (*Id.* at p. 133.)

Because the emergency repairs in the instant case were noncontroversial issues pending before the Board, defendant's allegedly false statements did not concern a public issue or an issue of public interest. For the foregoing reasons, the complaint does not seek relief based on allegations arising from protective activity. We accordingly need

14

not address the second prong of the anti-SLAPP analysis.  (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1162.)

## DISPOSITION

The order is affirmed.  Plaintiffs shall recover costs incurred on appeal.

SANCHEZ, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.