Filed 12/20/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DUAL DIAGNOSIS TREATMENT CENTER, INC., | |
| Plaintiff and Respondent, | G053046 |
| v. | (Super. Ct. No. 30-2015-00810428) |
| LEONARD BUSCHEL et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Ronald L. Bauer, Judge. Affirmed.

Law Offices of M. David Meagher and M. David Meagher for Defendants and Appellants.

Carlson & Jay Jayakumar, Jehan N. Jayakumar and Jasmine Dos Santos for Plaintiff and Respondent.

\* \* \*

This case arises out of the republication and electronic distribution of an outdated newspaper article concerning Dual Diagnosis Treatment Center, Inc. dba Sovereign Health of California (Sovereign) and one of the treatment centers it operates. Following the republication, which occurred in an electronic newsletter edited and published by Leonard Buschel, Sovereign sued Buschel and a nonprofit he founded, Writers in Treatment, Inc. (Writers), seeking injunctive relief and damages for alleged harm caused by supposed false statements made in the newsletter. Buschel and Writers filed a special motion to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] The trial court denied the motion; Buschel and Writers appeal. As detailed below, we affirm the trial court's order denying the motion because Sovereign's claims do not arise from activity protected by the anti-SLAPP statute.

## I

## FACTS

Sovereign is a corporation that "offers specialized mental health, substance abuse, and dual diagnosis disorder treatment" in eight treatment centers located in four different states. One of the treatment centers is situated in the City of San Clemente, which is also Sovereign's principal place of business.

Buschel, a former Certified Substance Abuse Counselor, is the editor and publisher of a weekly electronic newsletter related to alcohol and drug treatment and recovery entitled "Addiction/Recovery eBulletin." The eBulletin is distributed via e-mail to approximately 22,000 readers, including alcohol and drug treatment professionals and others interested in information concerning the industry and community. It is also made available on a Web site where both new and archived editions of the eBulletin are maintained.

---

[1] All subsequent statutory references are to the Code of Civil Procedure.

2

In his role as the editor and publisher of the eBulletin, Buschel identifies third party articles that he believes may be of interest to readers and develops a brief "excerpt" of each article, which is then included in the eBulletin along with an electronic link to the third party Web site where the article may be found.

On August 25, 2015, Buschel published an edition of the eBulletin. Among the linked articles was one from the Orange County Register concerning Sovereign's Chief Executive Officer (CEO), an article which Buschel personally reviewed prior to making the decision to include it in the eBulletin. The Orange County Register article, originally dated August 2010 and "updated" in August 2013, was titled "Man stripped of UK medical license runs local rehab."

The electronic link to the Orange County Register article in the eBulletin followed a short paragraph that read in full as follows: "A British doctor who was stripped of his medical license for conducting unethical drug trials on mentally ill patients is now running an unlicensed San Clemente rehabilitation facility that focuses on the mentally ill. There has begun an investigation of Sovereign Health of California, over its lack of license to run a residential treatment program. The British agency that licenses doctors struck Tonmoy Sharma off the medical register for lying and conducting unethical drug studies."

Not long after the August 25th eBulletin was published, Sovereign's Senior Director for Strategic Development e-mailed Buschel requesting that they speak "immediately" to "avoid further action" by Sovereign. The e-mail expressed concern that the eBulletin could do "substantial harm" to Sovereign given its distribution "to thousands of people." Buschel called the Director, and following a series of subsequent e-mail communications, Buschel published a "Retraction and Apology" eBulletin containing language provided by Sovereign.

Approximately three weeks later, Sovereign sued Buschel and Writers. The complaint alleges causes of action for libel, libel per se, false light and negligence, each

3

focused on the language in the August 25th eBulletin concerning the licensing status of Sovereign's San Clemente facility.

Pursuant to section 425.16, Buschel and Writers moved to strike the complaint on the grounds that it was a "strategic litigation against public participation" — a "SLAPP" action. They asserted that the eBulletin's statements about Sovereign were made in connection with matters of public interest, rendering section 425.16 applicable, and that Sovereign could not show a probability of succeeding on its claims, primarily due to a claimed federal statutory immunity. Sovereign opposed the motion, contending that section 425.16 does not apply because the statements at issue are not of "public interest." It further contended that even if the statements were deemed to be of public interest, no immunities apply and Sovereign established the requisite probability of prevailing on its claims.

Following a hearing, the trial court issued a minute order denying Buschel and Writers' motion. The order did not set forth the reason(s) for the denial. Buschel and Writers' timely appealed.

II

DISCUSSION

"The anti-SLAPP statute . . . provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. [The Supreme Court has] described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and

4

evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.' [Citation.]" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385, fn. omitted.)

"'An order denying a special motion to strike under section 425.16 is immediately appealable. [Citations.] Our review is de novo; we engage in the same two-step process as the trial court to determine if the parties have satisfied their respective burdens. [Citations.] If the defendant fails to show that the lawsuit arises from protected activity, we affirm the trial court's ruling and need not address the merits of the case under the second prong of the statute.'" (*Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 728 (*Talega*).)

As to the first step of the analysis, the sole inquiry is whether Sovereign's claims arise from protected speech or petitioning activity in connection with a public issue. (*Talega*, *supra*, 225 Cal.App.4th at pp. 727-728.) The focus is on what conduct is being challenged, not ""whether the conduct is actionable."" (*Ibid*.) The anti-SLAPP statute enumerates four categories of activity that may qualify as an "'act in furtherance of,'" including: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

5

Buschel maintains, as he did in the trial court, that section 425.16, subdivisions (e)(3) and (e)(4) apply.[2] He argues that the statements at issue were made in a "public forum" — in Internet communications and on the eBulletin Web site — and that they were in connection with a "public issue" or an "issue of public interest." Buschel supports the latter primarily by (1) noting that the eBulletin is distributed to approximately 22,000 addiction treatment professionals, and (2) stating that such persons "care about drug and alcohol rehabilitation services provided by organizations such as [Sovereign]" and the operations of their facilities.

Sovereign does not challenge the "public forum" aspect, but instead focuses its contentions on the "public issue" component. It asserts that Buschel fails to connect the claimed interest in the care and treatment of individuals with substance abuse addictions, an interest which Sovereign characterizes as "broad and amorphous," to the specific statements upon which Sovereign's complaint is based.

For the reasons explained below, we conclude that Buschel has not met his burden in demonstrating an "issue of public interest" under the statute.

We are mindful that the definition of "public interest" for purposes of the anti-SLAPP statute is to be, and has been, "broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 (*Damon*).) A prime example is activity that involves a large, powerful private organization which may impact the lives of many individuals. (*Talega*, *supra*, 225 Cal.App.4th at p. 734.) Other examples include situations in which the subject of the statement or activity was a person or entity in the public eye, the statement or activity involved conduct that could affect

_____

[2] Buschel does not assert that section 425.16, subdivisions (e)(1) and (e)(2) apply, and we find no evidence demonstrating a relevant legislative, executive, judicial or other proceeding.

6

large numbers of people beyond the direct participants, or the statement or activity involved a topic of "widespread, public interest." (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 (*Rivero*).)

"'[I]n cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance.'" (*Talega*, *supra*, 225 Cal.App.4th at p. 734, quoting *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 (*Du Charme*).)

Critical to our "public interest" determination is identification of the specific speech that is the subject of Sovereign's claims. (See *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 (*Commonwealth*); *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595.) A close review of the complaint reveals that each claim is based on the same two statements allegedly included in the August 25th eBulletin: (1) that Sovereign was "now running an unlicensed San Clemente rehabilitation facility[;]" and (2) that "[t]here has begun an investigation of Sovereign Health of California, over its lack of license to run a residential treatment program." Although the Orange County Register article linked to by the eBulletin largely concerned the foreign medical license status of Sovereign's CEO, a matter touched on in the eBulletin as well, none of Sovereign's claims are directed at any statements concerning that topic.[3]

---

[3] Sovereign makes such a representation in its briefing in this appeal.

The licensing status of a single rehabilitation facility is not of "*widespread, public interest.*" There is no showing that the San Clemente rehabilitation facility impacts, or has the potential to impact, a broad segment of society, or that the statements were part of some larger goal to provide consumer protection information. (See *Du Charme*, *supra*, 110 Cal.App.4th at p. 117 [widespread public interest involves private conduct that "'impacts a broad segment of society'"]; cf. *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1367 [Web site posting was of public interest because it dealt with more general issue of effects of dentist use of certain products, not just a highly critical opinion of a particular dentist]; *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 23-24 [statements contributing to general debate of "pros and cons of undergoing cosmetic surgery" were of widespread public interest]; *Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 523-524 [financial viability of owner and operator of four Orange County hospitals was of widespread public interest because it was large and powerful enough to impact healthcare needs of county's residents].)

We nevertheless recognize that the statements might be of interest to a limited group, such as potential clients, neighboring residents and businesses, and/or certain industry professionals. (See *Talega*, *supra*, 225 Cal.App.4th at p. 734 [financial responsibility for repair of residential community's trails not of widespread public interest]; *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 [accusations that company unlawfully dumped toxic chemicals not of widespread public interest because statements were not about pollution or potential public health and safety issues in general], overruled on other grounds by *Baral*, *supra*, 1 Cal.5th 376.) Thus, in order to trigger section 425.16, the speech must have occurred "in the context of an ongoing controversy, dispute or discussion." (*Talega*, *supra*, 225 Cal.App.4th at p. 734.)

While it appears that about one week before the August 25th eBulletin was disseminated, the City of San Clemente filed a lawsuit against Sovereign and others concerning Sovereign's San Clemente rehabilitation facility, that lawsuit alleges that the

8

facility is a public nuisance due to purported "smoking, loitering and unsafe driving" that occurs at the site. There are no allegations concerning the licensing status of the facility, and Buschel does not point us to any other evidence that suggests such an ongoing discussion, dispute or controversy. (Compare *Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP* (2007) 146 Cal.App.4th 841, 848 [comments concerning specific doctor and HMO contract were not of public interest because no ongoing dispute or discussion]; *Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1091 [statement that past homeowners association president stole money from and defrauded the association was of public interest given that it was made during an election campaign]; and *Damon*, *supra*, 85 Cal.App.4th at pp. 479-480 [political statements made during time 3,000 person gated residential community was making decision concerning future homeowners association management were matters of public interest].)

In asserting that there is an identifiable public interest, namely, "addiction treatment" and "how addiction treatment facilities operate," Buschel falls into the trap referred to in *Commonwealth* as the "synecdoche theory of public issue in the anti-SLAPP statute." (*Commonwealth*, *supra*, 110 Cal.App.4th at p. 34.) Almost any statement, no matter how specific, can be construed to relate to some broader topic. But, "[t]he part is not synonymous with the greater whole." (*Ibid*.) The eBulletin statements about Sovereign's San Clemente rehabilitation facility were simply comments about the purported license status of that particular facility. They did not concern treatment and rehabilitation facilities, in general, or even all of Sovereign's facilities. (Cf. *Ibid*. ["Selling an herbal breast enlargement product is not a disquisition on alternative medicine. Lying about the supervisor of eight union workers is not singing one of those old Pete Seeger union songs (e.g., 'There Once Was a Union Maid'). And, in the case before us, hawking an investigatory service is not an economics lecture on the importance of information for efficient markets"].)

Given the focused nature of the statements at issue in this case, Buschel's reliance on *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, is misplaced. There, the plaintiffs' claims arose from a Sports Illustrated cover story and HBO television program about incidents of child molestation in youth sports, both of which used a specific team to illustrate the issue. (*Id.* at pp. 626-627.) Some of the players and coaches that were part of the team sued, alleging invasion of privacy and infliction of emotional distress. (*Ibid.*) In concluding a "public issue" was involved for purposes of the anti-SLAPP statute, the appellate court emphasized that the article and program concerned the broader topic of child molestation in youth sports. (*M.G. v. Time Warner, Inc.*, *supra*, at p. 629.) It was not simply focused on whether particular children were molested. (*Ibid.*) Here, we have the opposite; focus on the particular and not on the broader topic. (See *Rivero*, *supra*, 105 Cal.App.4th at pp. 923-924 [distinguishing *M.G.* based on fact that documents were not tied to addressing a larger issue, but rather were focused on a specific employment situation involving eight employees].)

Equally inapposite is *Global Telemedia Intern., Inc. v. Doe 1* (C.D. Cal. 2001) 132 F.Supp.2d 1261, 1265, a case which concerned postings made in an Internet Web site's "chat-room" about a publicly traded company with 18,000 investors that had the potential for affecting market sectors (or the markets as a whole) and that had injected itself into the public arena via numerous press releases. There are no similar facts in this case.

Having concluded that Buschel failed to meet his burden in the first step of the anti-SLAPP analysis, we need not reach the question of whether Sovereign met the second step burden of establishing a probability of success on the merits of its claims, including the related evidentiary dispute. (§ 425.16, subd. (b)(1); see *Talega*, *supra*, 225 Cal.App.4th at p. 728.)

10

## III

## DISPOSITION

The order is affirmed.  Respondent is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.