Filed 5/5/20; certified for publication 5/26/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THIRD LAGUNA HILLS MUTUAL, | G057230 |
|    Plaintiff, Cross-defendant and Appellant, | (Super. Ct. No. 30-2017-00957937) |
|        v. | O P I N I O N |
| JEFF A. JOSLIN, | |
|    Defendant, Cross-complainant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge. Affirmed.

SwedelsonGottlieb, David C. Swedelson and Brian D. Moreno for Plaintiff, Cross-defendant and Appellant.

Jeff A. Joslin, in pro. per., for Defendant, Cross-complainant and Respondent.

\*       \*       \*

Strategic Lawsuits Against Public Participation (SLAPP suits) are meritless lawsuits designed to punish parties for protected activities (the right to petition or free speech). A party can move to strike a SLAPP suit by filing an anti-SLAPP motion. (Code Civ. Proc., § 425.16.)[1] There is a two-prong test: the moving party must show the lawsuit *arises from* its protected activities; the responding party can defeat the motion by showing the lawsuit has merit. This is an appeal from a denial of an anti-SLAPP motion.

Third Laguna Hills Mutual (a homeowner's association, hereinafter "the HOA") filed a complaint alleging homeowner Jeff A. Joslin violated its covenants. Joslin filed a cross-complaint alleging the HOA unlawfully prevented him from renting out his home. The HOA filed an anti-SLAPP motion to strike the cross-complaint: "It is clear that Joslin is suing the [HOA] for suing him." The court denied the motion.

The filing of a complaint is a protected activity under the anti-SLAPP statute (the right to petition). But to some degree, every party that files a cross-complaint is suing because it is being sued. Here, Joslin's cross-complaint arises from the HOA's alleged tortious acts, but not from the HOA's protected act of filing a complaint.

Thus, we affirm the trial court's denial of the HOA's anti-SLAPP motion.

I

FACTS AND PROCEDURAL BACKGROUND

In November 2017, the HOA filed a complaint against Joslin and Michael Cohan. The HOA alleged two causes of action: 1) breach of its governing documents; and 2) fraudulent conveyance.

In its complaint the HOA made general allegations as follows. Joslin and Cohan were both owners of a Third Laguna Hills Mutual condominium unit. Joslin and Cohan violated the HOA's covenants, conditions, and restrictions (CC&Rs) by allowing

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

2

unqualified persons (nonseniors) to reside in the home, and by allowing these people to cause nuisance violations (playing loud music). In February 2017, Cohan allegedly conveyed the condominium to Joslin "so as to avoid or mitigate damages and other amounts owed to the [HOA]." The HOA sought to set aside and void the transfer of the real property. The HOA also sought to recover over $50,000 for various assessments, penalties, late charges, and attorney fees.

In January 2018, Joslin filed a general denial asserting eight affirmative defenses: 1) no cause of action; 2) complaint unintelligible and uncertain; 3) wrong party sued; 4) failure to mitigate damages; 5) failure to exhaust administrative remedies; 6) plaintiff's comparative fault; 7) equitable estoppel; and 8) lack of notice.

In October 2018, Joslin filed a cross-complaint against the HOA. Joslin alleged 10 causes of action: 1) intentional interference with existing contractual relations; 2) intentional interference with prospective economic advantage; 3) violations of Business and Professions Code section 17200, et seq. (unfair competition); 4) breach of implied-in-fact contract; 5) tortious and wrongful ouster and violations of due process; 6) tortious interference with contractual relations; 7) tortious interference with prospective economic advantage; 8) intentional infliction of emotional distress; 9) private nuisance; and 10) injunctive relief.

In his cross-complaint Joslin made general allegations as follows. In October 2014, Joslin provided a loan to Cohan, secured by a deed of trust on Cohan's condominium. In February 2017, in lieu of a forfeiture, Cohan deeded his condominium to Joslin and signed a "'Residential Lease with option to purchase the Unit back' with a term of one year." In May 2017, the HOA notified Joslin of various fines and violations of its CC&Rs. Joslin attended a disciplinary hearing; the HOA offered to rescind the fines if Joslin moved forward with unlawful detainer proceedings against Cohan. In June 2017, the HOA sent Joslin an invoice for past due charges, which Joslin claimed to have paid. In July 2017, Cohan vacated the condominium. The HOA notified Joslin that he

3

"would only have access to inspect and maintain the unit, but that [he] would not be allowed to use, occupy, or rent the Unit, and this included the Unit's designated parking space." In September 2017, the HOA sent Joslin an invoice for attorney fees, but the HOA refused Joslin's request to provide an explanation of the fees. In November 2017, the HOA filed the complaint against Joslin and Cohan. In December 2017, Joslin applied for membership in the HOA; the application was denied. In January 2018, the HOA offered to provide Joslin with a breakdown of the outstanding fees, but he never received an accounting. As of October 2018 (when the cross-complaint was filed), Joslin alleged that he "has paid all current and past assessments, but is not allowed to use, occupy or rent out the Unit." Joslin sought damages according to proof, punitive damages, and injunctive relief.

In November 2018, the HOA filed an anti-SLAPP motion; Joslin filed an opposition. After conducting a hearing, the trial court denied the anti-SLAPP motion "because the [HOA] has not met the first prong; i.e., that the [HOA] was engaged in protected activity."

II

DISCUSSION

The HOA argues the court erred in denying its anti-SLAPP motion because Joslin's "cross-complaint arises out of protected activities and communications, i.e., the pre-litigation threats and the filing of the underlying lawsuit." We disagree.

Trial courts analyze anti-SLAPP motions according to a two-step process. Under the first prong, the moving party bears the burden of establishing the challenged allegations or claims arise from its protected activity; under the second prong (if the moving party met its burden), the responding party has the burden to establish that its challenged claims have at least "'minimal merit.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061, 1067 (*Park*).) An appellate

4

court reviews a trial court's ruling on an anti-SLAPP motion de novo. (*Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424, 433 ["we exercise our independent judgment in determining whether the challenged claim arises from protected activity"].)

In this discussion, we will:  A) review legal principles regarding anti-SLAPP motions; B) look at the relevant underlying proceedings; and C) analyze and apply the law to the facts in this case.

A.  *Legal Principles Regarding anti-SLAPP Motions*

Under the anti-SLAPP statute:  "A cause of action against a person *arising from* any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1), italics added.)  As relevant here, an "'act in furtherance of a person's right of petition . . .' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body . . . ." (§ 425.16, subd. (e).)

Under the anti-SLAPP statute, a challenged "claim *arises from* protected activity when that activity underlies or forms the basis for the claim." (*Park*, *supra*, 2 Cal.5th at pp. 1062-1063, italics added.)  "In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions . . . supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.)  We review the parties' pleadings, declarations, and other supporting documents "'only "to determine what conduct is actually being challenged, not to determine whether the conduct is actionable."'" (*Talega Maintenance Corp. v. Standard Pacific Corp*. (2014) 225 Cal.App.4th 722, 727-728 (*Talega*).)

5

A cross-complaint may be subject to an anti-SLAPP motion based on the plaintiff's right to petition. (*Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 24.) However, such a cross-complaint must allege a cause of action arising from the plaintiff's act of filing the complaint itself. (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1373-1374.) That is, a cross-complaint will ordinarily not be considered a SLAPP suit because a cross-complaint usually arises from the underlying dispute alleged in the complaint, and not out of the litigation process itself; a defendant's oppressive litigation tactics alone will not trigger a dismissal under the anti-SLAPP statute. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 933-934.)

## B. *Relevant Underlying Proceedings*

In December 2018, the trial court conducted a hearing on the HOA's anti-SLAPP motion. Joslin represented himself and told the court that the gravamen of his cross-complaint was that the HOA was preventing him from using or renting out his condominium. As far as the alleged outstanding fees, Joslin said: "I've never gotten any kind of documentation, any kind of billing." The HOA's attorney, Mr. Moreno, told the court that Joslin could not live in his condominium because he did not meet the minimum age requirement. Further, Mr. Moreno said that Joslin could not rent out his condominium because he was not current with his account. Mr. Moreno was uncertain as to how much money Joslin owed the HOA. At the end of the hearing, the following exchange occurred:

"THE COURT: Let's assume -- and solely for the purposes of argument, let's assume that the HOA is wrong.

"MR. MORENO: Okay.

"THE COURT: It doesn't matter [why]. You're just wrong and, and you [are] prevent[ing] him from renting it out.

6

"MR. MORENO:  Okay.

"THE COURT:  Are you telling me that he has no right to seek reimbursement for any losses that he's [incurred] because of the wrongful conduct of the HOA?  That [the HOA] can stop it under [section] 425.16?  Does that seem wrong?

"MR. MORENO:  No, because he has -- he has claims under the governing documents.  He has remedies under the governing documents, but he didn't choose to pursue those.  He chose to pursue ten tort claims . . . .

"THE COURT:  So you're not really alleging -- you're not saying 425.16 applies.  You're just saying he just didn't follow the contract?

"MR. MORENO:  I'm saying that 425.16 does apply because all of his claims arise out of our efforts to try to collect the amounts that are owed in this litigation.

"THE COURT:  So if you file a lawsuit, nobody can sue you in return?

"MR. MORENO:  They can sue . . . , but they can't allege what he's alleging in all of the tort claims.  I mean, he has an intentional infliction of emotional distress claim.

"THE COURT:  Well, that's subject to demurrer.  That's a whole different issue.  Right now you're trying to say he can't sue you at all.

"MR. MORENO:  That's not what I'm saying, your honor.  There are claims he can bring.  He just has not brought them yet.  The claims that are contained within the cross-complaint all fit into 425.16 because they are all tort claims and they are all geared toward pre-litigation and litigation efforts of the [HOA].  [¶]  If he has valid claims, he can come forward with proof, but they're all barred by [Civil Code section] 47, [subdivision (b), the litigation privilege].

"THE COURT:  That's a different issue, you would agree?

"MR. MORENO:  It's a similar issue.

"THE COURT:  But it's a separate issue?

"MR. MORENO:  Right."

7

Later that day, the trial court issued its ruling: "Cross-[D]efendant Third Laguna Hills Mutual filed a motion to strike the Cross-Complaint pursuant to Code of Civil Procedure section 425.16, subdivisions (e)(1) and (e)(2). The motion is DENIED because the Cross-Defendant has not met the first prong; i.e., that the Cross-Defendant was engaged in protected activity."

## C. Analysis and Application

The fact that an activity protected by the anti-SLAPP statute may have *triggered* a lawsuit does not necessarily mean that the causes of action *arose from* the protected activity. (*Talega*, *supra*, 225 Cal.App.4th at pp. 727-728.) In *Talega*, an HOA sued its former board members for fraud, negligence, and breach of their fiduciary duties. (*Id*. at p. 725.) The former board members filed an anti-SLAPP motion to strike the complaint, claiming the causes of action arose from statements they made at HOA board meetings, which are protected under the anti-SLAPP statute. (*Id*. at p. 726.) This court disagreed, finding the causes of action were primarily based on allegations the former board members had withheld information, and improperly directed the expenditure of funds, even if the expenditures were precipitated by votes made by the former HOA board members at the HOA board meetings. (*Id*. at pp. 729-730.)[2]

Here, the tort claims alleged in Joslin's cross-complaint arose from the HOA's decisions and actions, which purportedly prevented Joslin from renting out (and deriving income from) his condominium, not from the HOA's filing of the complaint. Further, the HOA's actions were presumably decided upon during its board meetings, and later communicated to Joslin either verbally or in writing, but it is not the HOA's written or oral communications that are being challenged in Joslin's cross-complaint; it is the

---

[2] This court also held that an HOA board meeting is not an "'official proceeding authorized by law'" within the meaning of the anti-SLAPP statute. (*Talega*, *supra*, 225 Cal.App.4th at p. 727.) This aspect of the opinion does not factor into our analysis.

HOA's underlying actions that are being challenged. (See *Talega*, *supra*, 225 Cal.App.4th at pp. 727-728.) Therefore, Joslin's tort causes of action do not *arise from* the HOA's protected activities. (See § 425.16, subd. (b)(1).)

To illustrate, in the first cause of action (intentional interference with existing contractual relations), Joslin alleges he had a valid contract with Cohan, but the HOA "demanded the contract be terminated." Joslin also alleges the HOA informed him that he would not be able to rent out the unit to other tenants, which caused him monetary damages. Joslin further alleges that the HOA acted with fraud, malice, and/or reckless disregard, entitling him to punitive damages. In this cause of action (as in the remaining causes of action, including intentional infliction of emotional distress), Joslin is challenging the underlying course of conduct by the HOA, not the HOA's communications per se (or the HOA's filing of the complaint). (See *Park*, *supra*, 2 Cal.5th at p. 1064 [there must be "'a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication'"].)

Thus, in this case the trial court properly denied the HOA's anti-SLAPP motion to strike Joslin's cross-complaint because the HOA did not meet its burden under the first prong. The HOA did not show the causes of action as alleged in Joslin's cross-complaint *arose from* the HOA's protected activities: the right of petition or free speech. (§ 425.16, subd. (b)(1).) Further, because the HOA did not overcome its burden, we need not proceed to the second part of the analysis and determine whether Joslin is likely to succeed on the merits of his claims. (See *Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 586 [if the moving party "'does meet its burden on the first step, the court should deny the motion and need not address the second step'"].)

In its briefing, the HOA argues: "In this case, the [HOA] and its attorneys were engaging in pre-litigation and post-litigation communications with Joslin demanding that Joslin evict and initiate unlawful detainer proceedings against his

9

occupants as well as in an effort to collect the fines and reimbursement assessments imposed." Therefore, relying on the litigation privilege,[3] the HOA argues: "This case falls under section 425.16, subdivision (e)(2), which includes statements made in connection with civil court litigation." We disagree.

The scope of protection from claims under the anti-SLAPP statute is not always the same as the scope of protection for communications under the litigation privilege. (See *Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 787-788 [cease and desist letters were not protected prelitigation statements under the anti-SLAPP statute]; see also *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1287-1288, fn. 23 [if the communications do not qualify for protection under the anti-SLAPP statute, the litigation privilege does not apply].)

The litigation privilege is a related concept, but it is separate and distinct from the anti-SLAPP statute. "[T]he litigation privilege is an entirely different type of statute than section 425.16. The former enshrines a substantive rule of law that grants absolute immunity from tort liability for communications made in relation to judicial proceedings [citation]; the latter is a procedural device for screening out meritless claims [citation]." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737.) For instance, malicious prosecution lawsuits are not categorically barred under the anti-SLAPP statute, even though "[b]y definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit." (*Id*. at pp. 735-736.)

Here, at the hearing on the anti-SLAPP motion, the trial court properly observed that any future analysis of the HOA's claimed litigation privilege would be different from its analysis of the HOA's anti-SLAPP motion. (See *Cruey v. Gannett Co.*

---

[3] "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law . . . ." (Civ. Code, § 47, subd. (b).)

(1998) 64 Cal.App.4th 356, 366-367 [the litigation privilege is an affirmative defense that is generally pled in an answer].) But more importantly, as we stated earlier, the gravamen of Joslin's causes of action concern the underlying *actions* of the HOA, not its oral or written communications themselves (whether they were privileged or not).

Finally, the HOA argues the enforcement of its CC&Rs "is a public issue and an issue of public interest, as it affects all of the 6,102 members (and the residents) of the [HOA]." We disagree. The instant lawsuit is essentially a monetary dispute between the HOA and Joslin. Although this particular HOA may be relatively large, this is not a public issue or an issue of public interest within the meaning of the anti-SLAPP statute. (§ 425.16, subd. (e);[4] see *Dual Diagnosis Treatment Center, Inc. v. Buschel* (2016) 6 Cal.App.5th 1098, 1105, 1107 ["licensing status of a single rehabilitation facility is not of '*widespread* public interest'"]; see also *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, 1508-1509 [removal of a director of a large charitable foundation was a private dispute and not a public issue or an issue of public interest; moving party presented no evidence of widespread public interest]; *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc.* (2010) 183 Cal.App.4th 1186, 1209 ["the mere fact that a large number of people may be affected by advertising does not, standing alone, satisfy the public interest requirement"].)

---

[4] "As used in this section, 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: . . . (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest . . . ." (§ 425.16, subd. (e).)

11

## III

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Joslin.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

Filed 5/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THIRD LAGUNA HILLS MUTUAL,<br><br>   Plaintiff, Cross-defendant and Appellant,<br><br>      v.<br><br>JEFF A. JOSLIN,<br><br>   Defendant, Cross-complainant and Respondent. | G057230<br><br>(Super. Ct. No. 30-2017-00957937)<br><br>ORDER GRANTING REQUEST FOR PUBLICATION |

Attorney Eliza Duggan, Center for Consumer Law & Economic Justice, UC Berkeley School of Law, has requested that our opinion filed on May 5, 2020, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.