Filed 9/23/20  Phelps v. McBratney CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JOHN PHELPS,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>GEORGE THOMAS MCBRATNEY et al.,<br><br>     Defendants and Appellants. | A156638<br><br>(San Francisco City & County Super. Ct. No. CGC-18-569634) |

Plaintiff John Phelps filed a complaint against defendants George Thomas McBratney, Trevor Allen McBratney, Phil Klaassen, Elaine Price, and Heather Parsons (jointly defendants) asserting they unlawfully recorded certain telephone conversations without his consent in violation of the California Invasion of Privacy Act (Pen. Code, § 630 et seq.).  Defendants appeal from the trial court's order denying their anti-SLAPP[1] motion, pursuant to Code of Civil Procedure section 425.16.  Phelps subsequently filed a cross-appeal from the court's order denying his request for attorney fees.  We affirm.

---

[1] "SLAPP" is an acronym for "strategic lawsuit against public participation."

# I. BACKGROUND

## A. *Factual Background*

Phelps is the chief executive officer of Rayne Clinical Nutrition Canada, Inc. (Rayne Canada), a Canadian pet food company. Phelps resides in Berkeley, California and operates Rayne Canada from an office in San Francisco, California. Rayne Canada's website describes itself as "100% Canadian owned and managed."

Defendants are all Canadian citizens and residents. George McBratney owns Pacific Veterinary Sales, Ltd. (PVS), which contracts with Rayne Canada to sell and distribute its pet food. George and Trevor McBratney, Klaassen, and Price are all employees or officers of PVS. They also own Red Leaf Management Ltd. (Red Leaf), which has provided financing to Rayne Canada and holds a minority ownership of Rayne Canada.

PVS and Red Leaf provided various loans to Rayne Canada over the course of multiple years. In 2018, defendants learned Phelps had been seeking a potential purchaser for Rayne Canada. The parties disagreed about whether Rayne Canada should be purchased, and Phelps and defendants each alleged wrongdoing by the other in connection with the potential acquisition. Rayne Canada ultimately ran out of capital, which resulted in PVS and Red Leaf filing insolvency proceedings in Canada.

During the course of the acquisition discussions, George and Trevor McBratney and Parsons recorded certain calls with Phelps. Defendants were in Canada at the time they participated in and recorded the calls. Phelps was in his San Francisco office during these calls. During these calls, the parties discussed the potential acquisition and Rayne Canada's business matters. Defendants did not inform Phelps the calls were being recorded, and Phelps was not aware of and did not consent to the recordings. At the

2

time the telephone calls were recorded, the parties were not engaged in litigation. However, defendants submitted the recorded calls as exhibits to affidavits filed in a lawsuit in Canada regarding the insolvency proceedings.

## B. Procedural Background

After defendants submitted the recordings in the Canadian litigation, Phelps filed a complaint in San Francisco Superior Court alleging causes of action for eavesdropping on or recording confidential communications (Pen. Code, § 632) and intentionally recording cellular telephone communications without consent (Pen. Code, § 632.7).

In response, defendants filed a special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion). Defendants alleged the First Amendment protected them from being compelled to disclose any recording, and the speech implicates a public issue because it impacts communications between California and "all foreign individuals and entities around the globe." Defendants further argued Phelps had no possibility of prevailing because Penal Code section 632 does not apply to actions in Canada, California's choice-of-law rules require application of Canadian law, and Phelps is not entitled to recover any of his requested relief.

Phelps opposed the motion, asserting the recordings were not a protected activity under the First Amendment, and the speech was not in connection with a public issue. Phelps also requested attorney fees pursuant to Code of Civil Procedure section 425.16, subdivision (c)(1).

The trial court denied defendants' anti-SLAPP motion. The court concluded defendants "fail to satisfy the first prong of the anti-SLAPP analysis" because recording telephone conversations "does not involve protected activity within the meaning of [Code of Civil Procedure section]

3

425.16[, subdivision] (e)(4)." The court also concluded the conversations at issue did not concern the public interest. However, the court also denied Phelps's request for attorney fees, noting "the motion was not frivolous." Defendants timely appealed, and Phelps filed a cross-appeal regarding the trial court's denial of attorney fees.

## II. DISCUSSION

### A. Standard of Review

Code of Civil Procedure section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." A motion under this provision is commonly known as an "anti-SLAPP" motion. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732.) The purpose of such motions is "to provide 'for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.] The statute is to 'be construed broadly.' " (*Simmons v. Bauer Media Group USA, LLC* (2020) 50 Cal.App.5th 1037, 1043 (*Simmons*).)

" 'We review de novo a trial court's decision on an anti-SLAPP motion. [Citation.] The anti-SLAPP statute requires a two-step process: "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them . . . . If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the

4

burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." [Citation.] In making these determinations the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ' " (*Simmons*, *supra*, 50 Cal.App.5th at p. 1043.)

## B. *The Anti-SLAPP Motion*

The trial court concluded defendants failed to meet the first prong of the anti-SLAPP analysis. We agree.

"The anti-SLAPP statute applies only to a 'cause of action . . . arising from' acts in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue . . . ." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 186.) Section 425.16, subdivision (e) of the Code of Civil Procedure identifies four categories of protected conduct: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." At issue here is the fourth category—i.e., "conduct in furtherance of the exercise of the . . . constitutional

5

right of free speech in connection with a public issue or an issue of public interest."  (Code Civ. Proc., § 425.16, subd. (e)(4).)

The United States Supreme Court has "held time and again that freedom of speech 'includes both the right to speak freely and the right to refrain from speaking at all.' "  (*Janus v. American Federation of State, County & Municipal Employees, Council 31* (2018) 585 U.S. ___ [138 S.Ct. 2448, 2463].)  Likewise, the California Supreme Court has emphasized the right to refrain from speech:  " 'Because speech results from what a speaker chooses to say and what he chooses not to say, the right in question comprises both a right to speak freely and also a right to refrain from doing so at all, and is therefore put at risk both by prohibiting a speaker from saying what he otherwise would say and also by compelling him to say what he otherwise would not say.' "  (*Beeman v. Anthem Prescription Management, LLC* (2013) 58 Cal.4th 329, 342.)  While the scope of "the First Amendment's right to freedom of speech is not unlimited," it encompasses both commercial and noncommercial speech, albeit to varying degrees.  (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 486–487; accord, *National Institute of Family & Life Advocates v. Becerra* (2018) 585 U.S. ___ [138 S.Ct. 2361, 2372] ["precedents have applied more deferential review to some laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech' "].)

The cases cited by Phelps do not categorically exempt defendants' decision to refrain from speech from the purview of the First Amendment. Phelps primarily relies on *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435 (*Gerbosi*), to argue " 'unlawfully listen[ing] in on [Phelps's] private conversations . . . does not fall within "protected activity" as defined by the anti-SLAPP statute.' "  We find that case distinguishable.  In

*Gerbosi*, plaintiff Finn alleged the defendant law firm intercepted her confidential telephone conversations by unlawful wiretaps and eavesdropping. (*Id*. at p. 441.) The trial court denied the law firm's anti-SLAPP motion, and the law firm appealed, contending the criminal conduct exception did not apply because the evidence of wiretapping was disputed. (*Id*. at pp. 442–443.) The Second Appellate District concluded the defendant's special motion to strike failed under the first prong of the anti-SLAPP analysis because "[u]nder no factual scenario offered by [the defendant] is such wiretapping activity protected by the constitutional guarantees of free speech and petition." (*Id*. at p. 446.) The court explained it was not necessary to evaluate the second prong of the anti-SLAPP analysis because wiretapping was illegal as a matter of law and therefore unprotected. (*Id*. at pp. 446–447; accord, *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1303 [claims arose from illegal computer hacking and wiretapping, and not from acts in furtherance of a prelitigation investigation].)

Here, we cannot categorically conclude defendants' conduct was illegal. Unlike the defendants in *Gerbosi* and *Malin v. Singer*, defendants do not dispute they recorded certain telephone calls without Phelps's consent. Rather, they contend the conduct is legal under Canadian law, and California choice-of-law provisions require deference to Canadian law. While we do not opine on the merits of defendants' position, we note this argument is more than a " '*mere assertion* that [defendants'] underlying activity was constitutionally protected.' " (*Gerbosi*, *supra*, 193 Cal.App.4th at p. 446, italics added by *Gerbosi*.) "[W]hen a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute . . . ." (*Ibid*.)

However, we need not fully resolve whether defendants' right to refrain from speech constitutes protected conduct because the anti-SLAPP statute only applies to a cause of action " '*arising from*' acts in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue . . . ." (*Martinez v. Metabolife Internat., Inc.*, *supra*, 113 Cal.App.4th at p. 186, italics added.)

For a claim to "arise from" protected conduct, it cannot merely follow such conduct, or even be triggered by such conduct. Rather, "the critical consideration is whether the cause of action is *based on*" the defendant's exercise of free speech. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) This means "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "The anti-SLAPP statute applies 'only if the speech or petitioning activity *itself* is the wrong complained of, and not just . . . a step leading to some different act for which liability is asserted.' " (*Simmons*, *supra*, 50 Cal.App.5th at p. 1045.) In making this determination, a court should " 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' " (*Ibid.*)

Penal Code section 632, subdivision (a) imposes liability on "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication."[2] Similarly, Penal Code section 632.7, subdivision (a) imposes liability on "Every person who,

---

[2] "[A] conversation is confidential if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768.)

8

without the consent of all parties to a communication, . . . receives and intentionally records . . . a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." While defendants did not inform Phelps they were recording certain telephone calls, their decision to not provide him with such information was merely a step toward recording the calls without his consent. The actual act, giving rise to liability, is recording those communications without consent. For example, similar liability would exist if defendants had requested consent, Phelps refused, and defendants still proceeded with recording the conversations. Accordingly, liability does not "arise from" defendant's decision to not disclose the recordings but rather from the act of recording the calls.

Moreover, we conclude the conversation does not relate to an issue of public interest. The anti-SLAPP statute does not provide a definition for "a public issue" or "an issue of public interest," and "it is doubtful an all-encompassing definition could be provided." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132; Code Civ. Proc., § 425.16, subd. (e)(4).) However, the Legislature intended there be "some attributes of the issue which make it one of public, rather than merely private, interest." (*Weinberg*, at p. 1132.) In *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 919 (*Rivero*), the court surveyed several cases and concluded statements made in connection with a public issue or an issue of public interest, for purposes of Code of Civil Procedure section 425.16, subdivision (e)(3) or (4), were generally those that "concerned a person or entity in the public eye [citations], conduct that could directly affect a large number of people beyond the direct participants

9

[citations] or a topic of widespread, public interest [citation]." (*Rivero*, at p. 924.)

Here, the recorded conversations were part of private business negotiations and did not involve any person or entity in "the public eye." However, defendants contend that, because they are Canadian citizens residing in Canada, the dispute "implicates foreign treaties, comity with other countries and Courts," and whether the California Penal Code may be applied to "other sovereign nations." Because of this alleged application to foreign nations, defendants contend the case impacts "all foreign individuals and entities around the globe who communicate with people in California."

We are unaware of any authority supporting defendants' position. As noted by the California Supreme Court, "At a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance. What a court scrutinizing the nature of speech in the anti-SLAPP context must focus on is the speech at hand, rather than the prospects that such speech may conceivably have indirect consequences for an issue of public concern." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 625; see also *Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1048 ["To be considered an issue of public interest, the communication must 'go beyond the parochial particulars of the given parties.' "]; *Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 83 ["Even recognizing public interest in climate change generally, there was no public interest in the private dispute . . . about data in papers on carbon sequestration."]; *Dual Diagnosis Treatment Center, Inc. v. Buschel* (2016) 6 Cal.App.5th 1098, 1105–1106 [court noted discussion of drug and alcohol rehabilitation services may well be an issue of public interest, but dispute regarding licensing status of a

10

single rehabilitation facility was not; "[a]lmost any statement, no matter how specific, can be construed to relate to some broader topic"].)

As noted above, here we have a private business dispute between various individuals, none of whom are in the public eye. (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.) Nothing in the record suggests that defendants' decision not to disclose the recordings was related to any broader challenge to the California Penal Code or any potential impact on sovereign nations or foreign treaties.[3] The nondisclosure impacted only those individuals involved in the telephone call, and the recordings were exclusively used for the purpose of supporting defendants' litigation against Phelps in Canada. On such facts, we cannot conclude the trial court erred in finding the dispute was not related to a matter of public interest.

## C. Phelps's Request for Attorney Fees

"Although a trial court's ruling on the propriety of an attorney fees award is generally reviewed under an abuse of discretion standard, the determination of whether the trial court had the statutory authority to make such an award is a question of law that we review de novo." (*Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 460.) "We review an order on a request for attorney fees under [Code of Civil Procedure] section 425.16 for abuse of discretion." (*Workman v. Colichman*, *supra*, 33 Cal.App.5th at p. 1056.) Although Phelps urges us to review the trial court's decision de novo, we would reach the same result if we applied de novo review.

---

[3] While other foreign individuals or entities may run afoul of Penal Code sections 632 and 632.7, defendants fail to identify the alleged broader impact with any degree of specificity. We question how many Canadian citizens, residing in Canada but with sufficient contacts to be subject to California's jurisdiction, are secretly recording telephone calls with California citizens. (See *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 736 ["The assertion of a broad and amorphous public interest is not sufficient."].)

11

Under Code of Civil Procedure section 425.16, subdivision (c)(1), "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] Section 128.5." Under subdivision (a) of section 128.5, "A trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." Subdivision (b)(2) defines "frivolous" as "totally and completely without merit or for the sole purpose of harassing an opposing party." (Code Civ. Proc., § 1285, subd. (b)(2).) Punishment for frivolous actions " 'should be used most sparingly to deter only the most egregious conduct.' " (*Crews v. Willows Unified School Dist.* (2013) 217 Cal.App.4th 1368, 1381.)

Phelps asserts the trial court abused its discretion because defendants' contentions "make no sense" and "have been rejected by controlling legal authority." We disagree. As discussed above, the First Amendment protects individuals from compelled speech. Defendants' citizenship and residence in Canada, which allegedly allows for recording telephone calls in certain situations, raises valid questions regarding whether defendants' conduct was lawful. As such, this case is distinguishable from *Gerbosi*, in which the court concluded the defendant's conduct was illegal as a matter of law and, for that reason, not protected. (*Gerbosi, supra*, 193 Cal.App.4th at p. 445.) Likewise, while we reject defendants' argument that this matter involves an issue of public interest, actions that are "simply without merit [are] *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty* (1982)

12

31 Cal.3d 637, 650.)  Accordingly, the trial court properly concluded defendants' motion was not frivolous.

## III.  DISPOSITION

The order is affirmed.  The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A156638
*Phelps v. McBratney*

14