Filed 3/18/21  Red Hydrogen, LLC v. Evans CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RED HYDROGEN, LLC, | |
| Plaintiff and Respondent, | G058946 |
| v. | (Super. Ct. No. 30-2019-01078007) |
| MARK EVANS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Kring & Chung, Kenneth W. Chung and Mark M. DelRosario for Defendant and Appellant.

Weeks Nelson, Gregory K. Nelson and Chandler G. Weeks for Plaintiff and Respondent.

\*        \*        \*

Plaintiff Red Hydrogen, LLC (Red Hydrogen), sued its former controller, defendant Mark Evans, claiming Evans sent a defamatory e-mail to a potential investor, resulting in Red Hydrogen losing the investment capital. Evans filed a special motion to strike the first amended complaint under Code of Civil Procedure section 425.16 (the anti-SLAPP statute), which the trial court denied. Evans appealed.

We affirm. Evans's e-mail, which was sent to a single investor, did not constitute participation in any public discussion and thus was not protected activity.

FACTS[1]

Red Hydrogen "is the designer, developer, manufacturer and seller of smart phones sold under the RED® brand. [Red Hydrogen] sells products directly to end users, as well as to retailers that in turn resell the phones and associated products." Evans was an employee of Red Hydrogen, functioning as controller in 2018 until he voluntarily terminated his employment in December.

"Evans was initially a consultant for Red.com, LLC (a sister company of [Red Hydrogen]) for a few years and then an employee of [Red Hydrogen]. When Evans was hired as an employee he signed an Employment Agreement with Red Technologies, LLC (now known as Red Hydrogen, LLC). . . . As part of that agreement, Evans agreed to maintain and keep confidential certain confidential information of [Red Hydrogen]. [¶] As the controller of Red Hydrogen LLC, Evans was in a position of trust and confidence."

---

[1] The following facts are taken from the evidence Red Hydrogen submitted in opposition to the anti-SLAPP motion.

2

Evans became disgruntled sometime during 2018 and particularly did not like certain executives of Red Hydrogen, which he expressed during his exit interview. At some unknown date, Evans created an e-mail address with the intent to complain to third parties about Red Hydrogen and its management.

From that e-mail address, on January 2, 2019, Evans anonymously sent the following e-mail to a potential Red Hydrogen investor: *"Thank you for the assurance. A friend of mine was fired by Jim, because he saw Jim and his wife at the courthouse and made a joke about them getting divorced. I apologize for the slow response. I've been on vacation for the Christmas break.*

*"\* Ask for a list of employees and contractors, and their salaries. Many sales people are treated as contractors, but are employees. It will take only one of these to turn the company into the IRS.*

*"\* Interview privately key employees in operations, marketing, sales, IT, Human Resources and finance. Especially spend time with the guy in charge of warranties and returns (these percentages are much higher than forecasted).*

*"\* Ask for copies of all employee exit interviews.*

*"… … …*

*"\*Have them redo the forecast based on lower actual sales and not just push out the forecast.*

*"\* Visit the top AT&T and Verizon stores and get their feedback on the Hydrogen One. I'm sure you have read the negative reviews online.*

*"\* Ask for the ROI on key marketing plans including the vans.*

*"Red Digital Cinema and Hydrogen are run exactly the same way and you can learn a lot by looking at Red Digital Cinema. Red Digital Cinema has never been profitable. Red has a history of pervasive mismanagement. Jim will use your investment to transfer money back to Red Digital Cinema. If you invest I would recommend that you put restrictions on your investment and they not be allowed to transfer any of your funds*

*to Red Digital Cinema. Paying a royalty to Red Digital Cinema makes no sense. The Red name has no benefit in the consumer world. Paying for Jim's aircraft expense has no benefit to Hydrogen.*

"... ... ...

        *"Based on the low sales you should get a higher ownership percent than you originally negotiated. Without you Hydrogen will not succeed, so you are in the driver's seat.*

        *"The best of luck to you."*

        This e-mail was sent in the midst of Red Hydrogen's negotiations with this potential investor, just prior to funding. After this e-mail, however, the potential investor delayed and ultimately refused to go through with the investment.

        Red Hydrogen's first amended complaint asserted causes of action for defamation per quod, trade libel, breach of contract, breach of duty of loyalty, intentional interference with prospective business, and negligent interference with prospective business. Evans responded with an anti-SLAPP motion. The court denied the motion, finding that while the alleged conduct may constitute protected activity, Red Hydrogen had made a sufficient showing on the merits. Evans appealed.

## DISCUSSION

        "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution *in connection with a public issue* shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1), italics added.) The anti-SLAPP statute contemplates a two-part analysis: first, determining whether the cause of action arises from protected

4

activity; second, if so, determining whether there is a probability of prevailing on the claim. We review a trial court's ruling denying an anti-SLAPP motion de novo. (*Dual Diagnosis Treatment Center, Inc. v. Buschel* (2016) 6 Cal.App.5th 1098, 1103.) Because we conclude below that Evans's e-mail did not constitute protected activity, we need not address whether Red Hydrogen has shown a probability of prevailing.

The anti-SLAPP statute defines an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" (which we refer to simply as protected activity) as falling into one of four categories of speech. (Code Civ. Proc., § 425.16, subd. (e).) Only one of those categories is relevant here: "(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Ibid.*) Our high court recently provided a thorough analysis of this catchall provision in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn*).

"The inquiry under the catchall provision . . . calls for a two-part analysis rooted in the statute's purpose and internal logic. First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn, supra*, 7 Cal.5th at pp. 149-150.) "[V]irtually always, defendants succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest." (*Id.* at p. 150.) "But the catchall provision demands 'some degree of closeness' between the challenged statements and the asserted public interest." (*Ibid.*) "'[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.'" (*Ibid.*) "What it means to 'contribute to the public debate' [citation] will perhaps differ based on the state of public discourse at a given time, and the topic of

5

contention. But ultimately, . . . we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at pp. 150-151.) "[A] court must consider whether a statement—including the identity of its speaker, for example, or the audience sought—contributes to or furthers the public conversation on an issue of public interest. It is by carefully observing this wedding of content and context that we can discern if conduct is 'in furtherance of' free speech 'in connection with' a public issue or issue of public interest." (*Id.* at p. 154.)

Turning to the context here, we conclude Evans's e-mail to the potential investor did not contribute to a public debate. Evans claims the e-mail and Red Hydrogen's cause of action touched on numerous topics of public interest, such as whether Red Hydrogen committed financial crimes, other forms of corporate malfeasance, and the quality of Red Hydrogen's consumer products. Our review of the e-mail, however, persuades us that Evans was not actually participating in a public debate on these topics. Instead, the context indicates Evans had a singular aim: to dissuade a particular investor. The e-mail he wrote was to a single investor group and was apparently never meant to be made public. He sent the e-mail anonymously. And the timing indicates it was engineered to torpedo a particular investment. Quite simply, this was insider information being disclosed in a purely private conversation for the sole purpose of disrupting a particular private investment.

Our conclusion is supported by our high court's analysis of the facts in *FilmOn*. There, the defendant DoubleVerify Inc. (DoubleVerify), was a company that monitors the content of internet Web sites and then reports back to advertisers to ensure the advertisements are not associated with unwanted content. They did this by issuing confidential reports to their clients on particular Web sites. (*FilmOn, supra*, 7 Cal.5th at p. 141.) The plaintiff FilmOn.com Inc. (FilmOn), was the owner of an internet service that DoubleVerify had, in private reports to clients, tagged as containing adult content

and being associated with copyright infringement, leading to a loss of advertising revenue for FilmOn. (*Ibid.*) The trial court granted DoubleVerify's anti-SLAPP motion (*id.* at p. 142), but our Supreme Court reversed. It concluded it was "plain enough" that DoubleVerify did not contribute to a public debate: "DoubleVerify issues its reports not to the wider public—who may well be interested in whether FilmOn hosts content unsuitable for children or whether its streaming platform infringes copyright—but privately, to a coterie of paying clients. Those clients, in turn, use the information DoubleVerify provides for their business purposes alone. The information never entered the public sphere, and the parties never intended it to." (*Id.* at p. 153.)

As our high court qualified its own opinion in *FilmOn*, so we qualify our opinion here: "no single element is dispositive." (*FilmOn, supra,* 7 Cal.5th at p. 153.) It is certainly possible to participate in a public debate via a private conversation. (*Id.* at p. 146.) More obviously, one can contribute to a public debate anonymously, as often happens on Internet message boards and the like. What makes our case unique is its context: the impending culmination of a private investment and the obvious intent to disrupt that investment. Because Evans's statement was not protected activity, the anti-SLAPP statute did not apply. The anti-SLAPP motion was properly denied.

DISPOSITION

The order denying the anti-SLAPP motion is affirmed.  Red Hydrogen shall recover its costs incurred on appeal.


IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.